**PUBLIC VERSION**

## UNITED STATES COURT OF INTERNATIONAL TRADE

## BEFORE: THE HONORABLE GARY S. KATZMANN, JUDGE

| | |
|---|---|
| _____ )<br>DALIAN MEISEN WOODWORKING CO., LTD. )<br>                                                              )<br>                                                              )<br>                     Plaintiff,                       )<br>                                                              )<br>          v.                                              )<br>                                                              )<br>UNITED STATES,                                  )<br>                                                              )<br>                     Defendant,                    )<br>                                                              )<br>_____ ) | Court No. 20-00109<br><br>**PUBLIC VERSION**<br>Contains Business Proprietary<br>Information at pages 4, 5, 7,<br>and 17 |

### MEMORANDUM IN SUPPORT OF PLAINTIFF 'S RULE 56.2 MOTION FOR JUDGMENT ON THE AGENCY RECORD

Jeffrey S. Neeley
Nithya Nagarajan
Stephen W. Brophy
Husch Blackwell, LLP

750 17th St., N.W.
Suite 900
Washington, D.C. 20006
(202) 378-2357
Jeffrey.Neeley@huschblackwell.com
Nithya.Nagarajan@huschblackwell.com
Stephen.Brophy@huschblackwell.com

Dated:  October 16, 2020

# TABLE OF CONTENTS

I.     STATEMENT PURSUANT TO RULE 56.2 ................................................................... 1

A.     The Administrative Determination Under Review .......................................... 1

B.     Issues Presented ................................................................................................. 1

II.    STATEMENT OF FACTS ...................................................................................... 2

III.   SUMMARY OF ARGUMENT ................................................................................ 9

IV.    STANDARD OF REVIEW ................................................................................... 11

V.     ARGUMENT ......................................................................................................... 13

A.     The Use of Facts Available with Adverse Inferences is not Supported by Substantial Evidence or Otherwise in Accordance with Law ........................ 13

B.     Commerce Exceeded its Statutory Authority in Assigning Meisen a Margin Based on Total Adverse Facts Available .......................................................... 21

C.     Commerce's Decision Not to Conduct Verification was Contrary to Law ...... 24

D.     The Application of Total Adverse Facts Available was Not Supported by Substantial Evidence or Otherwise in Accordance with Law ....................... 28

VI.    CONCLUSION ...................................................................................................... 29

# TABLE OF AUTHORITIES

## Cases

*Al Tech Specialty Steel Corp. v. United States*, 28 C.I.T. 1468, 1504 (CIT 2004) ....................... 12

*Beijing Tianhai Indus. Co. v. United States,* 52 F. Supp. 3d. 1351, 1361 (Ct. Int'l Trade 2015) . 13

*Burlington Truck Lines, Inc. v. United States*, 371 U.S. 156, 168 (1962) .................................... 11

*Camp v. Pitts,* 411 U.S. 138 (1973) ........................................................................................ 12

*Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc,*, 467 U.S. 837 (1984) ............ 13

*Clearon Corp. v. United States*, 359 F. Supp. 3d 1344, 1357 (Ct. Int'l Trade 2019) .................. 14

*Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938) ............................................................. 11

*F.LLI De Cecco Di Filippo Fara S. Martino S.p. A. v. United States*, 216 F.3d 1027, 1032 (Fed.Cir.2000) .......................................................................................................................... 21

*Huaiyin Foreign Trade Corp. v. United States*, 322 F.3d 1369, 1374 (Fed. Cir. 2003) .............. 11

*Huvis Corp. v. United Stactes*, 31 C.I.T. 1803, 1807 (2007) ...................................................... 14

*In re Murchison*, 349 U.S. 133, 136 (1955) .............................................................................. 12

*Melamine Chemicals, Inc. v. United States*, 5 CIT 116, 122, 561 F. Supp. 458, 463 (1983) ....... 12

*Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.,* 463 U.S. 29, 43 (1983) ............... 12

*Nat'l Nail Corp. v. United States,* 390 F. Supp. 3d 1356, 1375 (Ct. Int'l Trade 2019) ........... 11, 28

*Nippon Steel Corp. v. United States*, 24 C.I.T. 1158 (2000) ....................................................... 21

*Nippon Steel Corp. v. United States*, 337 F.3d 1373, 1382 (Fed. Cir. 2003) ............................... 21

*NMB Singapore Ltd. v. United States,* 557 F.3d 1316, 1319 (Fed. Cir. 2009) ............................. 12

*NTN Bearing Corp. v. United States*, 74 F.3d 1204, 1208–09 (Fed. Cir. 1995) .......................... 21

*Rhone Poulenc, Inc. v. United States*, 899 F.2d 1185, 1191 (Fed. Cir. 1990) ............................. 12

*Sahaviriya Steel Indus. Pub. Co. v. United States*, 649 F.2d 1371 (Fed. Cir. 2011) ................... 13

*Since Hardware (Guangzhou) Co. v. United States,* 34 C.I.T. 1262, 1268 (2010) ...................... 14

*Timken Co.* v. *United States,* 354 F.3d 1344, 1341 (Fed. Cir. 2004)............................................. 13

*Timken U.S. Corp. v. United States,* 421 F.3d 1350, 1355 (Fed.Cir.2005) ................................. 12

*Torrington Co. v. United States,* 25 C.I.T. 395 (2001) ................................................................ 20

*USX Corp. v. United States*, 11 CIT 82, 88, 655 F. Supp. 487, 492 (1987). ................................ 12

**Statutes**

15 U.S.C. §§ 41-58 .......................................................................................................................... 24

15 U.S.C. 1125(a) ............................................................................................................................ 24

19 C.F.R. § 351.307 ................................................................................................................... 9, 25

19 C.F.R. §351.301(c)(1) ........................................................................................................ 19, 20

19 U.S.C. § 1516a(b)(1)(B)(i) ........................................................................................................ 11

19 U.S.C. § 1677e ........................................................................................................................... 14

19 U.S.C. § 1677f(i)(3)(A) ............................................................................................................. 12

19 U.S.C. §1677m....................................................................................................................... 9, 25

19 U.S.C. § 1673 ............................................................................................................................. 22

19 U.S.C. § 1677 ...................................................................................................................... 20, 22

19 U.S.C. § 1677b ........................................................................................................................... 22

Statement of Administrative Action, Uruguay Round Agreements Act, accompanying H.R. Rep. No. 103–316, at 869 (1994), reprinted in 1994 U.S.C.C .A.N. 4040, 4199 ................................ 14

**Other Authorities**

*Wooden Cabinets and Vanities and Components Thereof From the People's Republic of China:*, 85 Fed. Reg. 11962 (February 28, 2020) (final countervailing duty determination) and accompanying Issues and Decision Memorandum at Comment 9 ................................................ 27

## MEMORANDUM IN SUPPORT OF PLAINTIFF'S RULE 56.2 MOTION FOR JUDGMENT ON THE AGENCY RECORD

## I.    STATEMENT PURSUANT TO RULE 56.2

Plaintiff Dalian Meisen Woodworking Co., Ltd. ("Meisen") submits this brief in support of its motion for judgment on the agency record pursuant to Rule 56.2 of the U.S. Court of International Trade.

### A.    The Administrative Determination Under Review

This action is an appeal from the U.S. Department of Commerce's ("Commerce") final determination in the antidumping investigation of *Wooden Cabinets and Vanities and Components Thereof from the People's Republic of China,*, 85 Fed. Reg. 11953 (February 28, 2020)  ("Final Determination"),  including the accompanying Issues and Decision Memorandum ("IDM"). (P.D. 1554).[1]  *See also Wooden Cabinets and Vanities and Components Thereof from the People's Republic of China*, 85 Fed. Reg. 17855 (March 31, 2020) ("Amended Final Determination") and *Wooden Cabinets and Vanities and Components Thereof from the People's Republic of China*, 85 Fed. Reg. 22126 (April 21, 2020) ("Order").

### B.    Issues Presented

1. Whether Commerce's decision to assign Meisen an antidumping margin based on total adverse facts available was supported by substantial evidence and otherwise in accordance with law.

---

[1] Citations to confidential documents from the Index to the Administrative Record are designated as "C.D. __," and citations to public documents and public versions are designated as "P.D. __." Citations to the Index to the Administrative Record are included with the first citation to record document below.  All record documents cited herein will be included in the Joint Appendix to be filed with the Court.

**PUBLIC VERSION**

2.  Whether Commerce exceeded its statutory authority, and assigned Meisen a margin utilizing total adverse facts available, where the decision was not based on substantial evidence or on any misstatements to Commerce but rather on alleged misstatements made by Meisen's U.S. affiliates to their customers in advertising and marketing materials.

3.  Whether Commerce's failing to conduct verification of Meisen and its U.S. affiliates, was unsupported by substantial evidence and contrary to law.

4.  If Commerce was correct in using facts available in any manner, whether Commerce's decision to assign Meisen a margin based on total adverse facts available, rather than neutral facts available or partial adverse facts available, was supported by substantial evidence or otherwise in accordance with law.

## II.   STATEMENT OF FACTS

Based on a petition filed by the domestic industry, Commerce initiated the underlying investigation on April 2, 2019. *Wooden Cabinets and Vanities and Components Thereof From the People's Republic of China: Initiation of Less-Than-Fair-Value Investigation*, 84 Fed. Reg. 12587 (April 2,2019). Meisen was subsequently chosen as a mandatory respondent and fully cooperated in the investigation by responding to Commerce's initial questionnaires and supplemental questionnaires.

As part of its responses, and in response to specific questions from Commerce, Meisen reported its factors of production ("FOP"), including the FOP for the birch wood that it used in its production. For example, in the Section D Questionnaire, Commerce asked the following:

> Report each raw material used to produce a unit of the merchandise under consideration. The consumption amount must be reported on a per unit basis (e.g., per kilogram, pound, etc.)

**PUBLIC VERSION**

See Section D Questionnaire Response, dated July 19, 2019 at page 13 (C.D. 989-999, P.D. 908).

Meisen fully responded by providing a complete list of all FOPs and reporting that it only used

birch wood in its production.  Id. at Exhibit D-5 (List of FOPs).  Meisen's U.S. affiliates also

reported U.S. sales of cabinets made of birch wood in response to the questions asked by

Commerce. In the Section C Questionnaire, Commerce asked the following:

> Indicate the primary type of material used in the forward face (including the doors
> and drawers) of the product…
>
> 4 = Solid wood - common grade hardwood species (Ash (F. nigra, Fraxinus
> quadrangulata, F. pennsylvanica, F. Americana), Birch (Betula), Gum
> (Liquidambar), Poplar (Liriodendron))
>
> 5 = Solid wood - mid grade hardwood species (Alder (Alnus), Box Elder (Acer
> negundo), Cypress (Taxodium), Elm - Rock (Ulmus crassifolia, U thomasii, U
> serotina, U. alata), Elm - Soft (Ulmus americana, U rubra), Maple (all varieties),
> Larch (Larix), Oak - White (Quercus arizonica, Q. douglasii, Q. macrocarpa, Q.
> lobate, Q. prinus, Q. muehlenbergii, Q. emoryi, Q. gambelii, Q. oblongifolia, Q.
> virginiana, Q. garryana, Q. lyrata, Q. stellata, Q. michauxii, Q. bicolor, Q. alba),
> Oak - Red (Quercus veluntia, Q. marilandica, Q. kelloggi, Q. falcate var.,
> pagodaefolia, Q. laurifolia, Q. ellipsoidalis, Q. rubra, Q. nuttallii, Q. palustris, Q.
> coccinea. Q. shumardii, Q. falcate, Q. laevis, Q. phellos))

Section C Questionnaire Response, dated July 19, 2019 at page 9. (C.D. 1011-1022, P.D. 910).

Meisen again responded completely by reporting the wood used for the face of the cabinets sold

in the United States.   Meisen used code "4" for birch wood and did not report any sales of maple

wood cabinets under code "5".  Id. at Exhibit C-1.  In a response to other specific questions

asked by Commerce, Meisen's U.S. affiliates also submitted price lists, product codes, invoices,

and marketing materials to Commerce.   In the Section A Questionnaire, Commerce asked

Meisen to provide price lists:

> Provide copies of all price lists used in sales of the subject merchandise to the
> United States and identify the types of sales to which these price lists pertain.
> Include any discount or rebate schedules used with each price list.

Section A Questionnaire Response," dated July 3, 2019 (C.D. 967-971, P.D. 869) at page 19.

Meisen responded to that question by providing all of the price lists for its sixteen U.S. affiliates.

Id. at Exhibit A-3.  Included within that exhibit were price lists from the [                    ] affiliate

which identified certain products as maple, including [

                                            ].  Id.  The price list for [

                            ].  Price lists from other affiliates also referenced products

described as maple, including [

                                    ].. Id.

   In addition, Commerce asked Meisen to submit commercial invoices for the sales by

Meisen's U.S. affiliates:

   On page 26 of your SAQR, you stated that, for each of the 16 affiliated company
   locations, the date on which the price and quantity are set is the date of invoice.
   Please state whether the material terms of sale changed after receipt of a PO from
   a customer and before the invoice was issued during the POI. If so, please submit
   a PO, invoice, and customer communication for three such sales.

Supplemental Section A Questionnaire Response," dated August 14, 2019 (Meisen Supp A), at

page 30 (C.D. 1090-1115, P.D. 984-988).

   Please submit documentation for invoice numbers [                    ] supporting
   your reported invoice date and SALEDATU

   Please state at what point the J&K companies record sales of merchandise under
   consideration in their accounting records (*e.g.*, when merchandise is shipped,
   invoiced, or payment is received) and provide supporting documentation from the
   POI.

   Please submit documentation supporting your reported invoice dates, shipment
   dates, and payment dates for observation numbers [
     ].

4

Supplemental Section C Questionnaire Response," dated August 28, 2019, at page 8 and 13

(C.D. 1197-1225, P.D. 1164).  Meisen responded to these questions fully by providing the

requested invoices of its U.S. affiliates.   Supplemental Section A Questionnaire Response at

Exhibit A-10 and Supplemental Section C Questionnaire Response at Exhibits SC-3, SC-4 and

SC-7.  Some of these invoices referenced reference products described as maple, including

[                    ], [                    ], [                    ], [                    ], [

      ].  Id.

> Commerce also asked Meisen to provide catalogs and brochures:
>
> Please confirm that Exhibit 18 of your SRA represents all catalogs and brochures
> issued by your company and affiliates that include the merchandise under
> consideration. If this is not the case, please submit the requested documentation.

Supplemental Section A Questionnaire Response at page 32.   Meisen fully complied with this

request at Exhibit A-41 by providing marketing materials used by its U.S. affiliates.  Among the

statements in the catalog, the J&K Cabinetry 2019 Edition Catalog described the first step in

J&K's production process as: "The finest solid maple wood is sanded until smooth and

vacuumed." Id. at Exhibit A-41.

On September 26, 2019, Petitioners filed pre-preliminary comments in which they

submitted additional marketing materials, arguing that Meisen's U.S. affiliates advertised

cabinets made of maple wood.  Pre-Preliminary Comments for Meisen, dated September 27,

2019. (C.D. 1429-1432, P.D. 1400-1404).   Commerce did not ask Meisen any questions on this

issue prior to the preliminary determination.

On October 9, 2019, Commerce published its preliminary determination and assigned

Meisen total adverse facts available before it conducted any further investigation.  *Wooden

Cabinets and Vanities and Components Thereof from the People's Republic of China*, 84 Fed.

Reg. 54106 (October 9, 2019) ("Preliminary Determination").   Commerce determined that due

to the apparent discrepancy between Meisen's questionnaire responses and the price lists,

invoices, and marketing materials of the U.S. affiliates, that it was appropriate to assign Meisen a

margin based on total adverse facts available without any further questions to Meisen to resolve

the purported  discrepancy.   Decision Memorandum for the Preliminary Affirmative

Determination of Sales at Less Than Fair Value, dated October 2, 2020 (P.R. 1407) and

Preliminary Determination Memorandum for Dalian Meisen Woodworking Co., Ltd., dated

October 2, 2019. (C.D. 1427, P.D. 1413).

Without further explanation, Commerce suspended verification of Meisen and its U.S.

affiliates on October 18, 2019.  Memorandum to the File, Verification of the Questionnaire

Responses of Dalian Meisen Woodworking Co. Ltd., dated October 18, 2019. (P.D. 1437).  On

October 24, 2019 and November 18, 2019, weeks after the preliminary determination,

Commerce issued post-preliminary supplemental questionnaires to which Meisen responded on

November 7, 2019 and November 21, 2019.  Post-Prelim Supplemental Questionnaire, dated

October 24, 2020 (C.D. 1466, P.D. 1446); Post-Prelim Supplemental Questionnaire Response,

dated November 6, 2019 (C.D.  1475-1482, P.D. 1459); 2nd Post-Prelim Supplemental

Questionnaire, dated November 18, 2020 (C.D. 1525, P.D. 1487); and 2nd Post-Prelim

Supplemental Questionnaire Response, dated November 21, 2019 (C.D. 1526-1527, P.D. 1492).

In those supplemental questionnaires, Commerce asked Meisen about the apparent discrepancy

for the first time.

In the first post-preliminary supplemental questionnaire, Commerce asked various

questions, including the following:

> Please explain why the promotional material of your U.S affiliates advertises
> cabinets made of maple.

> Please state whether you produced and/or sold cabinets made with maple wood during the POI and submit documentation supporting your response.

Post-Prelim Supplemental Questionnaire, dated October 24, 2020 at page 4.  In response to those questions, Meisen and its U.S. affiliates explained the following:

> Meisen only produced wooden cabinets produced from birch as was reported in its factors of production. The J&K Companies only sold the cabinets produced by Meisen during the POI. Therefore, by extension the J&K Companies only sold cabinets that were produced by Meisen using birch wood. See Exhibit SD2-2 for supporting documentation.
>
> Meisen reported its factors of production based upon its purchase records which can be reconciled to its purchase invoices as part of the factors of production to demonstrate that it purchased birch and reported the use of birch as part of its production.

Post-Prelim Supplemental Questionnaire Response, dated November 6, 2019 at pages 2 and 3.

Meisen also submitted a substantial amount of documentation supporting the fact that Meisen only purchased and used birch wood in its production.   Id. at SD2-2, SD2-5, SD2-7, SD2-8, SD2-9, SD2-11,

Meisen also explained that its U.S. affiliates consist of 17 separately operated companies (in 16 locations) that independently purchase and sell wooden cabinets from the Dalian Meisen factory and that all of the affiliates used common marketing materials. Id. However, Meisen emphasized that "during the POI there were no sales of products that were either solid maple or with a maple face, or that in any other ways used maple." Id.   Meisen also explained that "the majority of the maple references indicate the [

] rather than the type of wood that comprise the construction." Id.   Meisen confirmed that it reported to Commerce the actual wood used and sold, i.e. birch, since that is the information Commerce requested:

> Meisen and the J&K companies relied on the actual production records and usage records to determine and report the raw material used for the production of the merchandise under investigation. In this case, that information has been accurately reported to the Department and has been identified as birch. Regardless of the marketing materials that are disseminated to customers, the fact is that Dalian Meisen produced all of its wooden cabinets using birch, and the J&K Companies purchased all of the wooden cabinets sold in the United States from Dalian Meisen.

2nd Post-Prelim Supplemental Questionnaire Response, dated November 21, 2019 at 3.

Commerce then made no announcement regarding verification for over one month.

Commerce cancelled verification as a final matter on December 27, 2019, having waited 79 days

from the preliminary determination publication, and 36 days from the receipt of the second of

two supplemental responses from Meisen before it cancelled verification, Commerce justified its

decision not to verify by finding that Meisen should have brought the discrepancies to

Commerce's attention earlier:

> The dissonance between what Meisen marketed to its customers and what Meisen reported to Commerce was information that Meisen had in its possession and could have voluntarily presented to Commerce early in the investigation. Instead, Meisen chose not to disclose this information until after the petitioner raised it in its comments and Commerce issued an adverse preliminary determination, suspended verification, and expended considerable time and resources to issue multiple supplemental questionnaires and review thousands of pages of documentation in response to those questionnaires.

> Specifically, the admission that Meisen marketed and sold its cabinets as maple cabinets when, in fact, Meisen claims that they were made of birch, highlights continued concerns regarding the data reported in the control numbers for the normal value and the reported U.S. prices.

Letter re: Verification, dated December 27, 2019. (P.D. 1524).  Commerce published its Final

Determination on February 28, 2020 and continued to assign Meisen a margin based on total

adverse facts available.  *Wooden Cabinets and Vanities and Components Thereof from the*

*People's Republic of China*, 85 Fed. Reg. 11953 (February 28, 2020) and accompanying Issues

and Decision Memorandum.

8

### III.   SUMMARY OF ARGUMENT

Commerce's final determination was not supported by substantial evidence and was otherwise not in accordance to law.  Meisen and its U.S. affiliates cooperated fully in this investigation by responding truthfully and fully to all of the questions asked by Commerce in its initial and supplemental questionnaires.  Commerce has not found that Meisen or its U.S. affiliates submitted any false information or made any false claims before Commerce.  Meisen consistently stated to Commerce that it made and sold birch products and not maple products. When Commerce asked about the discrepancy between what Meisen's U.S. affiliates advertised and the actual physical product sold, Meisen acknowledged the discrepancy and submitted all additional information requested by Commerce to support the fact that it only produced and sold birch cabinets.  If Commerce believed that the issue still remained open,the need for verification became all the more critical.  Here, Commerce refused to finish its job and investigate whether Meisen's statements about not making or selling maple products were true.  Instead, it refused to follow through with its verification as required by law.  19 U.S.C. §1677m and 19 C.F.R. §351.307.

The record reveals that neither Meisen nor its U.S. affiliates withheld any information, there was no information requested that was missing from the record, and therefore there was no basis for Commerce to resort to facts available, let alone facts available with adverse inferences. The irregularity of Commerce's refusal to verify the information on the non-use of maple is made apparent by Commerce's approach to the very same issue in the parallel countervailing duty investigation that it conducted on the very same products.  Commerce verified the wood issue in the countervailing duty investigation and found no errors in Meisen's statements regarding the non-use of maple.  However, instead of verifying the issue here in the concurrent antidumping duty investigation, Commerce used the discrepancy as an excuse to cancel

verification and immediately resort to adverse facts available, a decision which was contrary to the statute, the record in this investigation, as well as its own practice in the parallel CVD case .

Moreover, Commerce's explanation of its final determination reveals that Commerce exceeded its statutory authority by punishing Meisen for the alleged marketing misstatements to its customers without any  linkage to a failure of Meisen in the dumping investigation, which is the only issue Commerce is tasked with investigating under the statute.  Commerce's only attempt to relate the alleged misstatements to customers to the antidumping law is the claim that the misrepresentation of the cabinets as made of maple somehow "masked" dumping.   This claim, however, is unexplained and incoherent.  In this case, the record shows that Meisen produced cabinets made of birch and its U.S. affiliates sold cabinets made of birch in the United States, and these facts were accurately reported in the data required for Commerce's analysis from the beginning of the investigation.   The fact that the cabinets may have been sold at higher prices garnered for cabinets made of maple wood does not "mask" any dumping.   Rather it indicates that there was no dumping to the extent that the U.S. price was higher than the normal value.   One has to wonder if it was actually the absence of dumping that troubled Commerce, rather than any issues with the advertising of the Meisen affiliates. To the extent that Meisen's U.S. affiliates gained a market advantage through marketing and naming of its products with the term "maple" that is an issue to resolved under other laws before the appropriate government agency or the courts using the applicable legal standards.  Commerce has not been given free-ranging authority under the statute to punish companies for issues it finds that are not within its jurisdiction.

Finally, even if Commerce had a basis to invoke facts available or adverse inferences, Commerce's decision to apply total adverse facts available, rather than neutral facts available or

partial adverse facts available was not supported by substantial evidence or otherwise in accordance with law.  Commerce's final determination cites to only one issue with Meisen's responses, whether it used birch or maple wood in its production and whether it sold cabinets made of such birch or maple wood.    When the record is deficient in only one respect, the Court has previously held that the use of total adverse facts available is inappropriate.  *See e.g. Nat'l Nail Corp. v. United States,* 390 F. Supp. 3d 1356, 1375 (Ct. Int'l Trade 2019).

As explained below and for all of these reasons, the Court should remand this case to Commerce for reversal of the AFA decision and for further actions by Commerce consistent with a final determination based on the use of information on the record.

## IV.   STANDARD OF REVIEW

In reviewing a challenge to Commerce's determination in an antidumping investigation "{t}he Court shall hold unlawful any determination, finding or conclusion found...to be unsupported by substantial evidence on the record, or otherwise not in accordance with law." 19 U.S.C. § 1516a(b)(1)(B)(i). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Huaiyin Foreign Trade Corp. v. United States*, 322 F.3d 1369, 1374 (Fed. Cir. 2003) (*quoting Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). Substantial evidence is "more than a mere scintilla." *Consol. Edison*, 305 U.S. at 229. A determination cannot be upheld if Commerce fails to articulate a "rational connection between the facts found and the choices made." *Burlington Truck Lines, Inc. v. United States*, 371 U.S. 156, 168 (1962). Furthermore, an agency determination must have a reasoned basis, and the Court may not defer to an agency determination premised on inadequate analysis or reasoning." *USX Corp. v. United States*, 11 CIT 82, 88, 655 F. Supp. 487, 492 (1987).

In addition, this Court must hold Commerce's final determination unlawful if it is, in any material respect, arbitrary, or if Commerce acted other than as a fair and objective arbiter of U.S. trade disputes. It is well established that "{t}he standards of fairness and reasonableness are inherent" in the trade laws. See, g. *Melamine Chemicals, Inc. v. United States*, 5 CIT 116, 122, 561 F. Supp. 458, 463 (1983). Inherent in these obligations is Commerce's basic responsibility under the law to conduct a fair investigation, which requires that its determination be based upon a reasoned analysis of the information in the record and not upon prejudgments or improper influence. See, e.g., *In re Murchison*, 349 U.S. 133, 136 (1955) ("a fair tribunal is a basic requirement of due process"). In addition, "the path of Commerce's decision must be reasonably discernable" to support judicial review. *NMB Singapore Ltd. v. United States,* 557 F.3d 1316, 1319 (Fed. Cir. 2009) (*citing Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.,* 463 U.S. 29, 43 (1983)); *see also Timken U.S. Corp. v. United States,* 421 F.3d 1350, 1355 (Fed.Cir.2005) (explaining that "it is well settled that an agency must explain its action with sufficient clarity to permit 'effective judicial review,' "and that "[f]ailure to provide the necessary clarity requires the agency action be vacated") (*quoting Camp v. Pitts,* 411 U.S. 138 (1973)); 19 U.S.C. § 1677f(i)(3)(A) (requiring Commerce to "include in a final determination ... an explanation of the basis for its determination"). It is Commerce's obligation that the trade laws are administered as accurately as possible. See *Al Tech Specialty Steel Corp. v. United States*, 28 C.I.T. 1468, 1504 (CIT 2004) (comparing with *Rhone Poulenc, Inc. v. United States*, 899 F.2d 1185, 1191 (Fed. Cir. 1990) (the "basic purpose" of the antidumping statute is to calculate duties "as accurately as possible").

Commerce's interpretation of the statute is reviewed under *Chevron U.S.A., Inc.* v. *Natural Resources Defense Council, Inc.,* 467 U.S. 837 (1984). *See Timken Co.* v. *United States,*

354 F.3d 1334, 1341 (Fed. Cir. 2004); *Beijing Tianhai Indus. Co. v. United States,* 52 F. Supp.

3d. 1351, 1361 (Ct. Int'l Trade 2015). "Under Chevron, the court first asks whether Congress has

directly spoken to the precise question at issue; if so, the inquiry ends and the Court must give

effect to the unambiguously expressed intent of Congress. *Sahaviriya Steel Indus. Pub. Co.* v.

*United States,* 649 F.3d 1371, 1375 (Fed. Cir. 2011) (citation omitted). "If the statute is silent or

ambiguous with respect to the issue, the court must ask whether Commerce's interpretation is

based on a permissible construction of the statute." *Id. citing Chevron,* 467 U.S. at 843.


V.   **ARGUMENT**

   A.   **The Use of Facts Available with Adverse Inferences is not Supported by Substantial Evidence or Otherwise in Accordance with Law**

The statute provides for the use of facts available and adverse inferences under very

limited circumstances, none of which were present in this case:

> (a) In general
> If--
> (1) necessary information is not available on the record, or
> (2) an interested party or any other person--
> (A) withholds information that has been requested by the administering authority or the Commission under this subtitle,
> (B) fails to provide such information by the deadlines for submission of the information or in the form and manner requested, subject to subsections (c)(1) and (e) of section 1677m of this title,
> (C) significantly impedes a proceeding under this subtitle, or
> (D) provides such information but the information cannot be verified as provided in section 1677m(i) of this title, the administering authority and the Commission shall, subject to section 1677m(d) of this title, use the facts otherwise available in reaching the applicable determination under this subtitle.
>
> (b) Adverse inferences
> (1) In general
> If the administering authority or the Commission (as the case may be) finds that an interested party has failed to cooperate by not acting to the best of its ability to comply with a request for information from the administering authority or the Commission, the administering authority or the Commission (as the case may be), in reaching the applicable determination under this subtitle--

13

    (A) may use an inference that is adverse to the interests of that party in selecting
from among the facts otherwise available; and
    (B) is not required to determine, or make any adjustments to, a countervailable
subsidy rate or weighted average dumping margin based on any assumptions
about information the interested party would have provided if the interested party
had complied with the request for information.

19 U.S.C.A. § 1677e.   Furthermore, the Courts have held that "Commerce may only apply facts

available or adverse facts available when there is a gap in the record." *See e.g. Huvis Corp. v.*

*United States*, 31 C.I.T. 1803, 1807 (2007).  The Statement of Administrative Action provides

that the "facts otherwise available" provision is intended to permit Commerce to "fill{ } gaps in

the record." *See* Statement of Administrative Action, Uruguay Round Agreements Act,

accompanying H.R. Rep. No. 103–316, at 869 (1994), reprinted in 1994 U.S.C.C .A.N. 4040,

4199 (explaining that 19 U.S.C. § 1677e(a) "generally will require Commerce to reach a

determination by filling gaps in the record due to deficient submissions or other causes"). "When

a respondent in an administrative review 'significantly impedes' the proceeding, Commerce is

permitted to 'fill {} gaps in the record' using facts otherwise available." *Since Hardware*

*(Guangzhou) Co. v. United States,* 34 C.I.T. 1262, 1268 (2010).  The U.S. Court of International

Trade has also held that Commerce may use facts available or adverse facts available where

information is missing from the record that is "necessary" to Commerce's determination.  *See*

*Clearon Corp. v. United States*, 359 F. Supp. 3d 1344, 1357 (Ct. Int'l Trade 2019) *citing* 19

U.S.C. § 1677e(a)(1) (authorizing the use of facts available if "necessary information is not

available on the record").

    In this case, none of the requirements for imposing facts available or adverse facts

available are present.  There is no necessary information missing from the record nor are there

any gaps in the records or deficiencies in Meisen's responses.  The issue in this case revolves

around a "discrepancy" in the record, i.e. whether the cabinets made by Meisen and sold by

Meisen's U.S. affiliates were made of birch or maple wood, rather than any missing information

or any deficiencies.   Commerce had all of the information it needed to make a determination

based on the information and explanations submitted by Meisen.   It merely had to resolve the

apparent discrepancy and make a determination based on the record evidence as to whether

Meisen used birch or maple wood to produce and sell the wooden cabinets under investigation.

To the extent that it believed that it needed more information to resolve any concerns, Commerce

could have resolved such concerns during the verification.  Had it done so there is every reason

to believe that it would have concluded here, as it did in the parallel CVD case, that maple was

not used as an input in the production or sale of the Meisen products.   Commerce, however,

failed to properly conduct its investigation as required by the statute and did not decide the core

issue of whether Meisen reported the production and sale of cabinets using birch or maple.

Instead, Commerce found that the discrepancy itself created a "mismatch" between the two

pillars of the AD margin calculation, export price and normal value, that prevented it from

calculating an accurate dumping margin:

> Although Meisen provided significant amounts of documentation supporting its
> reported FOPs, its U.S. sales database is comprised of sales of merchandise priced
> under CONNUMs that are not included in its FOP database. Moreover, Meisen's
> U.S. CONNUMs do not represent the maple cabinets it purported to sell and the
> record does not contain FOP data for the products Meisen represented selling in
> the U.S. market. As a result, U.S. prices for purported maple cabinets and NV for
> birch cabinets introduces a significant mismatch between the two pillars of our
> AD margin calculation. Given the above, we cannot calculate an accurate
> dumping margin with the data reported by Meisen, nor would verification of the
> accuracy of Meisen's reported data resolve the discrepancy such that the
> distortion could be remedied. Accordingly, we conclude that the rejection of
> Meisen's data is appropriate for this final determination.

IDM at Comment 22.  The above statement is unsupported by record evidence. First,

Commerce's statement that the "U.S. sales database is comprised of sales of subject merchandise

priced under CONNUMs not included in the FOP database" is incorrect.  Contrary to

Commerce's claim, and as explained by Meisen, there is no mismatch between the information reported by Meisen in its FOP and U.S. sales databases. Meisen reported using birch wood in its production in the FOP database. *See e.g.* Section D Questionnaire Response, dated July 19, 2019 at Exhibit D-5 (List of FOPs). Meisen's U.S. affiliates also reported U.S. sales of cabinets made of birch wood in the U.S. sales database. Section C Questionnaire Response, dated July 19, 2019 at page 9 and Exhibit C-1. Meisen never reported any FOP for maple or any sales of maple cabinets. To the extent that there was a discrepancy, it was between what Meisen reported in its databases and certain information on the record which indicated that Meisen's U.S. affiliates advertised the cabinets it sold to customers as maple cabinets. The question, therefore, is whether Meisen actually used maple wood or sold maple wood products. Commerce refused to rule on this question. Commerce could not have found that Meisen produced or sold maple products based on substantial evidence on the record, and it knew that. So instead it refused to verify the information supplied by Meisen and refused to address the issue head on. Moreover, Commerce never found that Meisen made any false statement to Commerce. Rather it states that Meisen "purported" to sell or "represented" selling maple cabinets in the U.S. market. In other words, Commerce dodged the issue and decided that the discrepancy (even though explained) itself was a sufficient basis to impose total adverse facts available. While Commerce claims that the discrepancy could not be resolved through verification, this claim seems absurd on its face and is never explained. Indeed, as noted below, Commerce itself verified this issue as part of its CVD investigation.

Commerce's determination that Meisen withheld information and failed to provide such information in a timely manner and significantly impeded the investigation is also not supported by the record:

> Accordingly, we determine that Meisen withheld information, failed to provide such information in a timely manner, and significantly impeded the investigation, pursuant to section 776(a)(2)(A)-(C) of the Act. Meisen could have raised the issue of the discrepancies between the products that it marketed to its customers and those it reported to Commerce early in the investigation, especially given Meisen's concerns of properly capturing the wood species in the CONNUM and how it could affect product matches and, ultimately, the dumping margin. This was information that Meisen had in its possession and could have voluntarily presented to Commerce. Instead, Meisen chose not to disclose this information until after the *Preliminary Determination* and only after Commerce suspended verification and expended considerable time and resources to issue multiple supplemental questionnaires and review thousands of pages of documentation in response to those questionnaires. Accordingly, we also find that Meisen failed to cooperate by not acting to the best of its ability and that an adverse inference is warranted is assigning a final margin to Meisen, in accordance with section 776(b) of the Act.

IDM at Comment 22.  Meisen did not withhold any information from Commerce or impede the

investigation.  In fact, it supplied all of the information requested by Commerce by the deadlines

set by Commerce.  Commerce did not find to the contrary.  Commerce itself noted in the

preliminary determination that the record evidence submitted by Meisen fully disclosed the

discrepancy and included the following:



1. A price list for J&K Miami, contains [    ] pages of products, the vast majority of which are identified as [                ]. Specific products include [



    ], among many others.

2. A price list for J&K Miami is labeled [                                ].

3. Other price lists reference numerous products described as [


    ], among many others.

4. Numerous commercial invoices submitted by Meisen reference products described as [                ], [                ], [                ], [                ], [                ], among many others.

5. The J&K Cabinetry 2019 Edition Catalog13 submitted by Meisen advertises the first step in J&K's production process as: The finest solid maple wood is sanded until smooth and vacuumed.

PUBLIC VERSION

Preliminary Determination Memorandum for Dalian Meisen Woodworking Co., Ltd., dated

October 2, 2019. citing Section A Questionnaire Response," dated July 3, 2019 at Exhibit 3;

Supplemental Section A Questionnaire Response," dated August 13, 2019 (Meisen Supp A), at

Exhibit 10; Supplemental Section C Questionnaire Response," dated August 27, 2019, at Exhibit

3, 4 and 7. Commerce did not ask Meisen anything about the advertising at the time of the

submission of the documents and apparently did not discover the discrepancy until Petitioner

submitted its pre-preliminary comments on September 26, 2019.  Commerce, as the investigating

authority still had sufficient time until the final determination, which was issued in February

2020, to resolve any discrepancy.  Commerce had ample time to conduct the verification and

confirm that Meisen had reported accurately to Commerce but refused to do so.

   Although Commerce claims otherwise, it inappropriately punished Meisen for not

responding directly to Petitioners' pre-preliminary comments.  While Commerce claims it is not

doing so, Commerce's rationale for imposing adverse facts available demonstrates that it is using

Meisen's decision to wait for Commerce to ask any necessary follow-up questions as a rationale

for imposing adverse facts available:

> Commerce first became aware of the discrepancy between Meisen's reported U.S. sales and its marketing materials on September 26, 2019,486 which was less than two weeks prior to the *Preliminary Determination*.487 Given the proximity to the *Preliminary Determination*, we based our preliminary decision for Meisen based on total AFA but announced that we intended to continue to examine the issue after the *Preliminary Determination*. **Meisen's claims that Commerce faulted Meisen for not responding to the petitioner's allegations or that Meisen's lack of response was our basis for AFA are misplaced.** Instead, our decision was rooted firmly in the record of this investigation, as it had been developed at the time of the *Preliminary Determination*, and in no way was the result of mere allegations or a lack of response from Meisen. **However, given the importance of the information to Commerce's analysis and gravity of the evidence cited in the petitioner's September 26 letter, it is notable that Meisen had the opportunity to respond with factual information and explanation of its own**

**but chose not to and, instead, waited until after the *Preliminary Determination* to request that Commerce allow Meisen to clarify the record.**

Although it is true that Meisen had previously reported to Commerce on more than one occasion that it did not consume any wood species other than birch, the discrepancies cited in the *Preliminary Determination* were not limited to the type of wood that Meisen consumed but also were related to the manner in which Meisen's products were marketed and sold in the United States.  If Meisen believed that it had already addressed the matter of wood species consumed in its production, it still had an obligation to explain to Commerce the numerous instances of marketing materials, and a sworn affidavit, that identified its products as being made of solid maple. **Instead Meisen was utterly silent regarding the discrepancy between its wood consumption and its marketing materials that appeared to directly contradict its consumption claims. As a result of Meisen's failure to clarify the record, Commerce was forced to delay verification and issue two supplemental questionnaires before Meisen directly addressed the issue**.  However, even in its second post-preliminary questionnaire response, Meisen gave conflicting and unconvincing reasons as to why its marketing materials misrepresented the species of wood used in its cabinets

IDM at Comment 22 (emphasis added).  But the law and regulations are clear that Meisen is not required to respond to allegations made by Petitioner nor is Petitioner in charge of the investigation.  Here, there was no allegation by Petitioners that Meisen had made any false statement to Commerce.  The regulations provide, that Meisen was "permitted" to submit a rebuttal to Petitioner's comments, but permission is not the same as being required to submit comments.  19 C.F.R. 351.301(c)(1)(v).  This is particularly so when Commerce itself may have different questions than those posed by Petitioners.  Petitioners may propose questions to Commerce but they are not allowed to ask such questions directly.  This regulation is written so that a respondent must respond to the concerns of Commerce, not to the concerns of adverse parties.  The statute states that Commerce is the entity tasked with the conduct of antidumping duty investigations.  Specifically Section 771 of the Tariff Act of 1930 (as amended) states that the administering authority "means the Secretary of Commerce, or any other officer of the United States to whom the responsibility for carrying out the duties of the administering

authority under this title are transferred by law." 19 U.S.C. 1677. In this instance, the

administering authority is Commerce and no other entity may usurp Commerce's role as fact

finder and substitute their analysis for that of Commerce. *See Torrington Co. v. United States,*

25 C.I.T. 395 (2001). Furthermore, the Department's regulations also make clear that it is the

Secretary (i.e., the Department) that will issue questionnaires and that responding parties must

respond within the time limits specified by the Department. *See* 19 C.F.R. §351.301(c)(1).

Nowhere in the statute or regulations does it state that Petitioners may assume the status of either

the "administering authority" or the "Secretary" in order to mandatorily require a respondent to

reply to Petitioner's allegations. Meisen is only required to respond to questions asked by

Commerce. When Commerce asked about the discrepancy, Meisen responded to those

questions. Thus, Commerce had answers on the record from Meisen as to the allegations

regarding its non-use of maple to produce the cabinets it sold to its affiliates. The questions have

been asked and answered.

Meisen and its U.S. affiliates responded fully and completely to every question asked by

Commerce, which is what it is required to do under the "best of its ability" standard. Commerce

may only resort to adverse inferences where a respondent fails to cooperate to the best of its

ability. "Compliance with the 'best of its ability' standard is determined by assessing whether a

respondent has put forth its maximum effort to provide Commerce with full and complete

answers to all inquiries in an investigation." *Nippon Steel Corp. v. United States*, 337 F.3d 1373,

1382 (Fed. Cir. 2003). "While the parties must exercise care in their submissions, it is

unreasonable to require perfection." *NTN Bearing Corp. v. United States*, 74 F.3d 1204, 1208–09

(Fed. Cir. 1995). "In order for its finding to be supported by substantial evidence, "Commerce

needs to articulate why it concluded that a party failed to act to the best of its ability, and explain

why the absence of this information is of significance to the progress of its investigation."

*Nippon Steel Corp. v. United States*, 24 C.I.T. 1158 (2000).  "[T]he purpose of section 1677e(b) is to provide respondents with an incentive to cooperate, not to impose punitive, aberrational, or uncorroborated margins." *F.LLI De Cecco Di Filippo Fara S. Martino S.p. A. v. United States,* 216 F.3d 1027, 1032 (Fed.Cir.2000).  In this case, Meisen and its U.S. affiliates responded to the questions asked by Commerce by accurately reporting FOPs for birch wood and U.S. sales of birch cabinets, which is the essence of antidumping calculation.  It also submitted other documentation requested by Commerce which revealed the discrepancy at issue and when Commerce asked about the discrepancy, Meisen responded to those questions and submitted documents demonstrating that it only used birch wood.  That is all Meisen is required to do under the "best of its ability" standard.  Resolving the discrepancy and deciding whether Meisen used birch or maple wood is part of Commerce's responsibilities, but Commerce abdicated that responsibility by relying on Petitioner's allegations, refused to make a decision on this issue or fully investigate the issue through verification.

Accordingly, this issue should be remanded to Commerce for reconsideration of its decision to use total adverse facts available.

### B.     Commerce Exceeded its Statutory Authority in Assigning Meisen a Margin Based on Total Adverse Facts Available

In addition, Commerce improperly relied on a finding that Meisen's U.S. affiliates misstated the type of wood to its customers to support the imposition of total adverse facts available.  Commerce never stated that Meisen failed to properly report or code its sales in the U.S. sales or FOP databases submitted to Commerce in the investigation.  Under the statute, Commerce is tasked with determining if the subject imports have been dumped in the U.S.

market, which involves the comparison of the U.S. price with the normal value.  The statute

provides the following with respect to Commerce's authority in antidumping investigations:

> If…the administering authority determines that a class or kind of foreign
> merchandise is being, or is likely to be, sold in the United States at less than its
> fair value…by reason of imports of that merchandise or by reason of sales (or the
> likelihood of sales) of that merchandise for importation,  then there shall be
> imposed upon such merchandise an antidumping duty, in addition to any other
> duty imposed, in an amount equal to the amount by which the normal value
> exceeds the export price (or the constructed export price) for the merchandise.

19 U.S.C.A. § 1673.  The statute also provides that "[t]he terms 'dumped' and 'dumping' refer to

the sale or likely sale of goods at less than fair value and "[t]he term 'dumping margin' means

the amount by which the normal value exceeds the export price or constructed export price of the

subject merchandise." 19 U.S.C.A. § 1677; *see also* 19 U.S.C.A. § 1677b.  That is the extent of

Commerce's statutory authority.

Commerce's decision in this case, however, indicates that Commerce is punishing

Meisen for what it believes to be misstatements in its U.S. affiliates' marketing material and

statements to customers:

> The implicit admission is that, in Meisen's scenario, the customer would have
> seen the description in the price list and would have a reasonable basis to assume
> that the wood species and price listed in that document was the starting point and,
> even if the dimensions were adjusted slightly for the final design, the species of
> wood presented would be the species provided, which, in this case, was maple.
> Meisen's online and print marketing materials are so replete with references to its
> cabinets being made of solid maple wood, and completely devoid of any reference
> to the alleged actual species of wood, birch, that its customers would have no
> reason to believe that the cabinets they purchased were made from any wood
> species other than maple wood. In other words, Meisen's customers would have
> clearly believed that the products they were purchasing were made of solid maple
> wood, a species of wood that is considered to be of more premium value than
> common grade birch wood, as a result of online and print marketing, and in-store
> price lists presented by Meisen's sales people.

> Indeed, given the wealth of online and print marketing materials on the record, as well as
> Meisen's own statements identifying Meisen's cabinets as solid maple cabinets, and
> Meisen's admission that it does not advertise any birch products, there can be no question

that Meisen is intentionally misleading its customers into believing they are purchasing
maple cabinets and that Meisen's customers believe they are paying for products made of
maple wood.

IDM at Commerce 22.  Commerce's only attempt to relate this behavior to the antidumping law

is to claim that "a consequence of Meisen's misrepresentations is the potential masking of

dumped sales."  Id.  That claim, however, is never explained.  In this case, Meisen produced

cabinets made of birch and its U.S. affiliates actually sold cabinets made of birch in the United

States, regardless of what the customer may have thought.  The fact that the cabinets were sold

based on higher prices for "maple" cabinets does not mask any dumping.  Rather, it indicates that

Meisen's U.S. affiliates were able to garner higher prices than would have been charged for a

birch product and thus were not dumping to the extent that the U.S. price was higher than the

normal value.  It seems that Commerce may well have known that the high prices being charged

by Meisen's affiliates would lead to a finding of no dumping, and thus utilized a results-oriented

approach rather than relying on substantial evidence on the record.  If Meisen's U.S. affiliates

were misleading their customers by claiming that the cabinets were made of maple when they

were really made of birch, as Commerce states above, then the information Meisen submitted in

its databases is correct and Commerce had all of the information it needed to determine if there

was dumping.  To the extent Meisen's U.S. affiliates gained some market advantage by

mispresenting its cabinets as made of maple, that is not an issue to be investigated under the

antidumping law nor is it an issue that can be punished under the antidumping law.

The issue before Commerce was not whether Meisen's affiliates deserved a Better

Business Bureau certification.  The issue before Commerce was whether Meisen reported its

consumption of birch wood to produce cabinets exported to the United States and whether it

accurately reported the physical characteristics of its sales of cabinets it sold to customers in its

U.S. sales database.  That is the extent of the scope of the authority given to Commerce in the context of an antidumping duty investigation.  If the answer to the above is "yes" then Commerce does not have the authority to invoke adverse inferences against Meisen.  Commerce does not have the authority to punish a company for what it believes to be misstatements made to customers, a violation of law that has been assigned to other agencies to investigate and remedy. *See e.g.* Federal Trade Commission Act, 15 U.S.C. §§ 41-58, as amended and Lanham Act, 15 U.S.C. 1125(a). Commerce itself recognized that this issue was an FTC matter and not an issue with which Commerce had the authority:

> We recognize the petitioner's concerns that the record of this investigation indicates that Meisen is engaged in advertising and selling its materials in an untruthful manner to consumers in the United States. Such business practices fall within the expertise of the U.S. Federal Trade Commission, and we have therefore shared relevant public information with that agency for further investigation and, if appropriate, enforcement action

That is the route that Commerce should have followed if it believed Meisen's affiliates were making misstatements to its customers, as an antidumping investigation has no procedures or sanctions for addressing such issues, made outside the confines of the dumping investigation.

This issue should be remanded to Commerce to reconsider its decision to apply total adverse facts available without consideration of any alleged misstatements by Meisen's U.S. affiliates to their customers.

### C.      Commerce's Decision Not to Conduct Verification was Contrary to Law

To the extent that there were factual discrepancies that Commerce believed needed to be resolved, Commerce was required to conduct a verification.  The statute and regulations both require Commerce to verify all information relied upon in making a final determination in an investigation without exception.  The statute provides that Commerce "shall" verify all information relied upon in making a final determination in an investigation:

(i) Verification: The administering authority shall verify all information relied upon in making--
(1) a final determination in an investigation,
(2) a revocation under section 1675(d) of this title, and
(3) a final determination in a review under section 1675(a) of this title, if--
(A) verification is timely requested by an interested party as defined in section 1677(9)(C), (D), (E), (F), or (G) of this title, and
(B) no verification was made under this subparagraph during the 2 immediately preceding reviews and determinations under section 1675(a) of this title of the same order, finding, or notice, except that this clause shall not apply if good cause for verification is shown.

19 U.S.C.A. § 1677m.  The regulations likewise provide that Commerce "will" verify factual

information upon with the Secretary relies:

(b) In general.
(1) Subject to paragraph (b)(4) of this section, the Secretary will verify factual information upon which the Secretary relies in:
(i) A final determination in a continuation of a previously suspended countervailing duty investigation (section 704(g) of the Act), countervailing duty investigation, continuation of a previously suspended antidumping investigation (section 705(a) of the Act), or antidumping investigation;

19 C.F.R. § 351.307.  Commerce attempts to circumvent this requirement by claiming that it did

not rely on any of Meisen's information for purposes of its final determination:

With regard to Meisen's contention that Commerce is required to verify the information it submitted; we disagree. According to section 782(i)(1) of the Act and 19 CFR 351.307(b)(1)(i), Commerce will verify factual information upon which the Secretary relies in, *inter alia*, a final determination in an AD investigation. However, for the reasons described herein, we are not relying upon any of Meisen's reported information for this final determination and, therefore, there is no information that must be verified. Moreover, as a result of the dissonance between Meisen's reported U.S. sales data and its FOP data, its questionnaire responses contain fundamental discrepancies that were not directly addressed until well after the *Preliminary Determination* and that remain unresolved even after Meisen's belated attempt at clarification. When a party submits substantially deficient responses, Commerce is under no obligation to use this information. Under these circumstances, there is no requirement to verify the information. If a respondent provides substantially incomplete questionnaire responses and Commerce must then base the company's rate entirely on facts available, as in this case, then verification is "meaningless."

IDM at Comment 22.  Commerce cannot avoid the statute's requirement that it conduct

verification by simply rejecting all information submitted by a respondent and then declaring that

it is not relying on that information so there is no need for verification.  As Meisen argues above,

the record also does not support Commerce's claim that Meisen's responses were "substantially

deficient" or that its responses were "substantially incomplete."  The only alleged deficiency

cited by the Department is not a deficiency at all, but rather a potential discrepancy, *i.e.* the fact

that Meisen reported to Commerce that it only produces and sells cabinets made from birch,

while certain other record information from its affiliates indicated that they sold cabinets to

customers claiming the cabinets were made of maple.

Moreover, Commerce's claim that it did not rely on any of the information submitted by

Meisen is belied by Commerce's own actions.  Commerce's justification for the use of total

adverse facts available is based not based on record information submitted by Meisen and its

U.S. affiliates.  Specifically, the Department relied on record information that Meisen

purportedly sold its product as maple, when Meisen reported in its questionnaire responses that it

only produced and sold merchandise produced from birch.  Furthermore, that issue, whether

Meisen used birch or maple wood for the cabinets it produced and sold, is an issue that could

have been resolved by an on-site verification.  Yet, Commerce decided to avoid verifying the

issue and did so despite the fact that the Department verified the same issue in the parallel

countervailing duty verification:

> At verification, our review of Meisen's records, and the communications it had
> with its suppliers, indicated that Meisen purchased only birch sawn wood.  In our
> review, we examined the purchase manager's e-mail and WeChat message
> history, and found no discrepancies. Thus, the information provided was fully
> verified and, as such, there is no missing information from the record. Regardless
> of Meisen's representations to its customers, we obtained verifiable data for the
> purpose of conducting our LTAR analysis with respect to the company's sawn
> wood purchases.

26

*Wooden Cabinets and Vanities and Components Thereof From the People's Republic of China*, 85 Fed. Reg. 11,962 (February 28, 2020) (final countervailing duty determination) and accompanying Issues and Decision Memorandum at Comment 9. As noted above, Commerce's claim in the current antidumping case that the discrepancy could not be resolved through verification is never explained and is contradicted by the fact that Commerce itself verified the same issue in the countervailing duty investigation. Commerce seems to want to cover its tracks and claims that the information from the CVD investigation was not relevant to the AD investigation:

> Moreover, it is not clear how information from the CVD investigation would shed any light on the deficiencies in Meisen's reported information in this AD investigation. Meisen itself admits that it represented its products to U.S. customers as products made from maple but claims that its products were actually produced using birch wood.

IDM at Comment 22. This makes no sense. How can it be that Commerce's own actions do not shed light on its ability to verify the necessary information? The finding that Meisen only used birch or maple wood is the central issue with which Commerce was concerned. The fact that Commerce verified the issue in the countervailing duty investigation is evidence that Commerce could have verified the issue in the antidumping investigation. Moreover, the fact that Commerce concluded that Meisen only used birch wood in the countervailing duty investigation further supports Meisen's claims and supports the calculation of a margin based on the information submitted by Meisen.

This case should be remanded to Commerce to verify Meisen's responses or to explain further why verification was not appropriate.

### D. The Application of Total Adverse Facts Available was Not Supported by Substantial Evidence or Otherwise in Accordance with Law

Even if Commerce did have the power to impose facts available or adverse inferences under these circumstances, the resort to total adverse facts available was not supported by substantial evidence or otherwise in accordance with law and the use of partial facts available or partial adverse facts available would have been more appropriate. The Court has found the use of partial adverse facts available appropriate where a respondent only failed to provide information in one respect and that, in such cases, the use of only partial adverse facts available is the reasonable approach. This Court has held that the use of total adverse facts available was not permissible where there was usable information on the record.

> Although the statute provided for a picking-and-choosing process, this Court has sustained Commerce's use of total adverse facts available where (1) the record contained no usable information for core components of Commerce's dumping analysis (as where the respondent simply did not answer the questionnaire) and (2) substantial evidence showed that the respondent was egregious in its failure or refusal to comply with Commerce's requests for information (as where the respondent concealed information requested by Commerce). (citations omitted). Where, on the other hand, some of the information could be used, or the deficiency was only "with respect to a discrete category of information," and a respondent is found not to have complied to the best of its ability, the use of "partial adverse facts available" is directed by the statute. (citation omitted).

*Nat'l Nail Corp. v. United States,* 390 F. Supp. 3d 1356, 1375 (Ct. Int'l Trade 2019). In this case, the only "discrepancy" on the record was whether Meisen produced and sold cabinets made from birch or maple wood. That is not a sufficient basis to reject all of the information submitted by Meisen and use total adverse facts available.

Commerce's concern in this case seems to have been that it would be inaccurate to compare a normal value calculated based on the claim that the cabinets were made from birch with a U.S. sales price that reflected the price of cabinets made from maple:

> Given these facts, there is absolutely no scenario where a U.S. sale priced for maple wood could ever be compared to the NV of a product made with birch, wood, a comparison Meisen argues that Commerce should now make.
>
> Evidence on the record of this investigation indicates that maple is significantly more expensive than birch, showing that maple solid wood or veneers can be as much as twice as expensive as birch. Indeed, the SV used to value maple and birch in the *Preliminary Determination* was 912 Euros and 622 Euros, respectively.
>
> A consequence of Meisen's misrepresentations is the potential masking of dumped sales. The question before Commerce is simple: what is the "fair" value of the products Meisen sold in the United States during the POI? By comparing Meisen's cabinets that are priced as though they were produced with maple, (and which may or may not have been sold at prices below NV for maple cabinets) to an NV based on a non-maple wood species, the degree to which Meisen may be selling at LTFV is effectively obscured.

IDM at Comment 22. But the products sold were birch and the products produced were birch and Commerce could have verified this issue. Yet, even assuming that this concern and the use of facts available or adverse inferences were justified, the obvious solution is not to resort to total adverse facts available but to apply some form of neutral facts available or partial adverse facts available with respect to this sole issue.

This issue should be remanded to Commerce to either use partial adverse facts available or explain why total adverse facts available is necessary under the facts of this case.


## VI.    CONCLUSION

For the reasons stated above, Consolidated Plaintiff respectfully requests that the Court: (1) determine that Commerce's final determination in the antidumping investigation is unsupported by substantial evidence and otherwise not in accordance with law in the ways alleged above; (2) remand this case to Commerce with instructions to reconsider its final determination consistent with the findings of this Court; and (3) provide such other relief as this Court may deem just and proper.

**PUBLIC VERSION**

Respectfully submitted,

/s/Jeffrey S. Neeley

Jeffrey S. Neeley
Nithya Nagarajan
Stephen W. Brophy
**Husch Blackwell LLP**
750 17th St., NW
Suite 900
Washington, DC 20006
(202) 378-2409
Email: Jeffrey S. Neeley@huschblackwell.com

*Counsel for Plaintiff Dalian Meisen Woodworking Co., Ltd.*

Dated:  October 16, 2020

PUBLIC VERSION

## CERTIFICATE OF COMPLIANCE

Pursuant to Chamber Procedure 2(B)(2), the undersigned certifies that this submission complies with the word limitation requirement.  The word count for this submission, as computed by Husch Blackwell's word processing system Microsoft Word 2010, is 9,687 words.

/s/ Jeffrey S. Neeley
_____
Jeffrey S. Neeley
Husch Blackwell LLP
*Counsel for Plaintiff Dalian Meisen*
*Woodworking Co., Ltd.*

**PUBLIC VERSION**

## CERTIFICATE OF SERVICE

A true and accurate copy of the foregoing was electronically filed on October 16, 2020,

via the Court's ECF filing system, which automatically serves notice on counsel of record.

/s/ Jeffrey S. Neeley

Jeffrey S. Neeley
Husch Blackwell LLP
*Counsel for Plaintiff Dalian Meisen*
*Woodworking Co., Ltd.*