# UNITED STATES COURT OF INTERNATIONAL TRADE

## BEFORE: THE HONORABLE M. MILLER BAKER, JUDGE

|  |  |  |
|---|---|---|
| DALIAN MEISEN WOODWORKING CO., LTD. | ) ) ) ) ) | |
| Plaintiff, | ) ) | Court No. 20-00109 |
| v. | ) ) | |
| UNITED STATES, Defendant, | ) ) ) ) ) | |

## ORDER

Upon consideration of Plaintiff's Comments in Opposition to the Remand, and all other papers and proceedings, it is hereby:

**ORDERED** that Plaintiff's Comments in Opposition to the Final Remand requesting further remand are **GRANTED**; and it is further

**ORDERED** that this case is remanded to the U.S. Department of Commerce in accordance with the Court's decision.

**SO ORDERED.**

Date: _____, 2022  
New York, New York

_____  
M. Miller Baker, Judge

PUBLIC VERSION

## UNITED STATES COURT OF INTERNATIONAL TRADE

## BEFORE: THE HONORABLE M. MILLER BAKER, JUDGE

|  |  |  |
|---|---|---|
| DALIAN MEISEN WOODWORKING CO., LTD. | ) ) ) ) | |
| Plaintiff, | ) ) ) | Court No. 20-00109 |
| v. | ) ) | |
| UNITED STATES, | ) ) | |
| Defendant, | ) ) ) | |

## PLAINTIFF'S COMMENTS IN OPPOSITION TO REMAND

Jeffrey S. Neeley
Stephen W. Brophy
Husch Blackwell, LLP

750 17th St., N.W.
Suite 900
Washington, D.C. 20006
(202) 378-2357
Jeffrey.Neeley@huschblackwell.com
Stephen.Brophy@huschblackwell.com

Dated:  August 15, 2022

PUBLIC VERSION

# TABLE OF CONTENTS

INTRODUCTION .................................................................................... 1

SUMMARY OF ARGUMENT .................................................................. 1

STANDARD OF REVIEW ....................................................................... 3

BACKGROUND ...................................................................................... 4

    A.   The Court's Remand Order and Findings ..................................... 4

    B.   Commerce's Final Remand Results ............................................... 5

ARGUMENT .......................................................................................... 9

    A.   Commerce Improperly Resorted to the Use of Total Adverse Facts Available ......................................................................... 9

    B.   Commerce Should Have Issued a Supplemental ILVQ .............. 14

    C.   Commerce Erred in finding that Meisen Failed to Provide Requested Source Documents ................................................ 16

    D.   The Alleged Errors Identified by Commerce Do Not Justify the Application of Total AFA .................................................. 19

       1.   Sales Terms .......................................................................... 20

       2.   Destination ........................................................................... 21

       3.   Purchaser ............................................................................. 22

       7.   Date of Shipment .................................................................. 29

       9.   Affiliates .............................................................................. 30

CONCLUSION .................................................................................... 32

PUBLIC VERSION

# TABLE OF AUTHORITIES

## Cases

*AK Steel Corp. v. United States*, 21 C.I.T 1204, 1223 (1997) ................ 11

*Ausimont USA, Inc v. United States*, 19 CIT 151, 157, 882 F. Supp. 1087, 1092 (1995) ...................................................................................... 3

*Bowe–Passat v. United States,* 17 CIT 335, 343 (1993) ......................... 15

*Changzhou Wujin Fine Chem. Factory Co. v. United States*, 701 F.3d 1367, 1374 (Fed. Cir. 2012) ............................................................... 4

*Chevron U.S.A. Inc. v. U.S.A. Inc. v. Natural Res. Def. Council*, 467 U.S. 837, 842-43 (1984) ....................................................................................... 4

*Chia Far Indus. Factory Co., Ltd v. United States,* 343 F. Supp. 2d ..... 12

*China Kingdom Imp. & Exp. Co. v. United States*, 31 C.I.T. 1329, 1344–45 (2007) .......................................................................................... 2, 15

*Clearon Corp. v. United States*, 359 F. Supp. 3d 1344, 1359 (Ct. Int'l Trade 2019) ......................................................................................... 10

*Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938) ........................... 3

*F.lli De Cecco Di Filippo Fara S. Martino S.p.A. v. United States,* 216 F.3d 1027, 1032 (Fed. Cir. 2000) ............................................................ 12

*FDA v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 132 (2000) ... 4

*Ferro Union, Inc. v. United States*, 23 C.I.T. 713, 721 (1999) ................ 12

*Fili De Cecco Di Filippo Fara S. Martino Sp.A. v. United States,* 216 F.3d 1027, 1032 (Fed. Cir. 2000) ............................................................ 12

PUBLIC VERSION

*Guizhou Tyre Co., Ltd. v. United States*, 348 F.Supp.3d 1261, 1270 (Ct. Int'l Trade 2018) ................................................................................. 10

*Huvis Corp. v. United States*, 31 C.I.T. 1803, 1807 (2007) ...................... 9

Nat'l Nail Corp. v. United States, 390 F. Supp. 3d 1356, 1373 (June 12, ,2019) ................................................................................................. 2, 13

*Nippon Steel Corp. v. United States*, 337 F.3d 1373, 1382 (Fed. Cir. 2003) ....................................................................................................... 11

*Nakornthai Mill Public Co. v. United States*, 587 F. Supp. 2d 1303, 1306 (Ct. Int'l Trade 2008…………………………………………………………….3

*Usinor Sacilor v. United States,* 19 CIT 711, 745, 893 F.Supp. 1112, 1141–42 (1995) ................................................................................... 15

*Xinjiamei Furniture (Zhangzhou) Co. v. United States*, 968 F. Supp. 2d 1255, 1259 (Ct. Int'l Trade 2014)…………………………………………………..3

## Statutes

19 U.S.C § 1677e(b) ................................................................................. 10

19 U.S.C. § 1516a(b)(1)(B)(i) ..................................................................... 3

19 U.S.C. § 1677e(a)(1) ............................................................................ 10

19 U.S.C. § 1677m(d) .......................................................................... 2, 29

19 U.S.C. §1677a.................................................................................... 27

## GLOSSARY

| Abbreviation | Term |
|---|---|
| AFA | Adverse Facts Available |
| CEP | Constructed Export Price |
| Commerce | U.S. Department of Commerce |
| CD | Confidential Record Document (Investigation) |
| CONNUM | Control Number |
| Final Determination | *Wooden Cabinets and Vanities and Components Thereof from the People's Republic of China*, 85 Fed. Reg. 11953 (February 28, 2020) |
| Final Remand Results | Final Results of Redetermination Pursuant to Court Remand, dated June 6, 2022 |
| ILVQ | In Lieu of Onsite Verification Questionnaire |
| ILVQR | In Lieu of Onsite Verification Questionnaire Response |
| J&K GA | J&K Georgia |
| J&K IL | J&K Illinois |
| J&K NJ | J&K New Jersey |
| PD | Public Records Documents (Investigation) |
| RCD | Remand Confidential Record Document |
| RPD | Remand Public Record Document |

PUBLIC VERSION

# INTRODUCTION

On behalf of Dalian Meisen Woodworking Co., Ltd. ("Meisen" or "Plaintiff"), and pursuant to this Court's July 13, 2022 remand Scheduling Order, ECF No. 85, we submit Plaintiff's comments in opposition to the Final Results of Redetermination Pursuant to Court Remand ("Final Remand Results"), filed by the U.S. Department of Commerce ("Commerce") on June 6, 2022, ECF No. 79.  Commerce filed the administrative record for the Final Remand Results on June 17, 2022, ECF No. 82.[1]

# SUMMARY OF ARGUMENT

Having failed in its attempt to assign Meisen a margin based on total AFA due to the false advertising discovered in the investigation, Commerce has now resorted to a game of gotcha to find other reasons to get to the same result.  It has ignored the fact that Meisen's has seventeen U.S. affiliates, that are generally small cabinet retailers making hundreds of thousands of transactions but with unsophisticated

---

[1] References to the administrative record for the *Final Remand* are shown as "RCD" (confidential) and "RPD" (public). References to the initial administrative record submitted to the Court on July 11, 2020, ECF No. 25, are shown as "CD" (confidential) and "PD" (public).

accounting systems, and has demanded a level of perfection in reporting that is simply not realistic under the facts of this case. The question of whether a respondent has cooperated to the "best of its ability" is case-specific, and an AFA rate is not based on the conduct of a "hypothetical, well-resourced respondent." *Nat'l Nail Corp. v. United States*, 390 F. Supp. 3d 1356, 1373 (June 12, ,2019). "{A} reviewing court must be able to conclude that Commerce looked at the respondent's ability to comply as well as its performance in complying." *Id.*

Commerce has also failed to allow Meisen an opportunity to explain or correct the errors found in the In Lieu of Onsite Verification Questionnaire ("ILVQ"), which is contrary to the terms of the statute under 19 U.S.C. § 1677m(d).  The courts have previously held that this statutory requirement is not ambiguous.  *China Kingdom Imp. & Exp. Co. v. United States*, 31 C.I.T. 1329, 1344–45 (2007).  Nor has Commerce adequately explained why the errors found during verification could not have been handled through the application of partial facts available, with or without an adverse inference.   Meisen submitted thousands of pages of documentation and allocated significant resources in an attempt to cooperate with Commerce

throughout the investigation and the remand, but Commerce has decided that it is reasonable to ignore all of that information and resort to a total AFA margin that is not based on any of Meisen's information. For the reasons explained further below, the Court should again remand this case to Commerce to provide Meisen with a fair opportunity to obtain a company-specific margin.

## STANDARD OF REVIEW

The Court will hold unlawful agency determinations that are "unsupported by substantial evidence on the record, or otherwise not in accordance with law." 19 U.S.C. § 1516a(b)(1)(B)(i); *Ausimont USA, Inc. v. United States*, 19 CIT 151, 157, 882 F. Supp. 1087, 1092 (1995). Substantial evidence means that there is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938).  The Court also reviews Commerce's remand redeterminations for compliance with the Court's remand order. *Xinjiamei Furniture (Zhangzhou) Co. v. United States*, 968 F. Supp. 2d 1255, 1259 (Ct. Int'l Trade 2014) (quoting *Nakornthai Mill Public Co. v.*

*United States*, 587 F. Supp. 2d 1303, 1306 (Ct. Int'l Trade 2008).

In judging the Department's interpretation of a statute, the Court does so under the framework established by *Chevron U.S.A. Inc. v. Natural Res. Def. Council*, 467 U.S. 837, 842-43 (1984). Under Chevron, the Court first asks whether Congress has directly spoken to the precise question at issue. If Congress has done so, the inquiry ends; the Court "must give effect to the unambiguously expressed intent of Congress." *FDA v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 132 (2000) (*quoting Chevron*, 467 U.S. at 842-43). Commerce must act reasonably and may not be arbitrary and capricious. *See e.g., Changzhou Wujin Fine Chem. Factory Co. v. United States*, 701 F.3d 1367, 1374 (Fed. Cir. 2012) ("Commerce's decision will be set aside if it is arbitrary and capricious.").

## BACKGROUND

### A.  The Court's Remand Order and Findings

The Court remanded Commerce's *Final Determination* with regard to its application of total adverse facts available ("AFA") to Meisen holding that Commerce's reasons for rejecting the questionnaire responses submitted by Meisen and relying on total AFA were beyond

4

PUBLIC VERSION

the agency's statutory authority. *See Dalian Meisen Woodworking Co., Ltd. v. United States*, Court No. 20-00109, Slip Opinion 21-158 (CIT November 18, 2021). The Court ordered that Commerce reconsider its application of AFA to Meisen, including whether and to what extent it will use Plaintiff's submitted information in its antidumping calculations. *Dalian Meisen Woodworking Co., Ltd. v. United States*, Court No. 20-00109, Order (CIT November 18, 2021). The Court also ordered that, insofar as Commerce chooses to use Plaintiff's information, it must then undertake verification. *Id.*

### B. Commerce's Final Remand Results

After remand, Commerce issued four extensive supplemental questionnaires to which Meisen timely responded. *See* Meisen's Letters, REM 21-158 Third Supplemental Section C Questionnaire, dated January 11, 2022 (RCD 3-19, RPD 11), Appx__; REM 21-158 Third Supplemental Section D Questionnaire, dated January 19, 2022 (RCD 20-86, RPD 15-17), Appx__; REM 21-158 Third Supplemental Section E Questionnaire, dated January 20, 2022 (RCD 87-96, RPD 18), Appx__; REM 21-158 Fourth Supplemental Section C Questionnaire, dated February 14, 2022 (RCD 100-127, RPD 28-29), Appx__; REM 21-158 Supplemental Section C and D Questionnaire Response, dated February 16, 2022 (RCD 128-153, RPD 30), Appx__. Commerce issued a questionnaire in lieu of on-

site verification to which Meisen also timely responded. *See* Meisen's Letter, In Lieu of Onsite Verification Questionnaire Response, dated March 9, 2022 (RCD 156-329, RPD 37), Appx__.

Commerce then placed new factual information on the record without revealing its purpose or relevance to Meisen or asking Meisen any specific questions regarding the information. Memorandum, New Factual Information, dated March 23, 2022 (RCD 334, RPD 44), Appx__.   Meisen responded to the best of its ability by placing rebuttal factual information on the record based on its interpretation of Commerce's intent. Meisen's Letter, Comments on New Factual Information, dated March 28, 2022 (RCD 339, RPD 48), Appx__.   But without explanation of why Commerce thought that the information was relevant, the comments of Meisen were guesswork.   Commerce then put more new factual information on the record and explained that it purported to show an affiliation between a company called [

], which was not reported as an affiliate by Meisen. Memorandum, New Factual Information, dated March 31, 2022 (RCD 341, RPD 50), Appx__.  Meisen subsequently placed rebuttal factual information on the record demonstrating that no such affiliation

PUBLIC VERSION

exists.  Meisen's Letter, Comments on New Factual Information, dated April 6, 2022 (RCD 343-346, RPD 54), Appx___.

In its Final Remand Results, Commerce again assigned Meisen a margin based on total AFA finding that the information provided by Meisen could not be verified and was unreliable.  As set out in the Appendix to the Final Remand Results, Commerce classified the issues into three categories:

1) Commerce claims that Meisen failed to provide the following requested source documents to support its U.S. sales database:

- source documents to support its J&K GA Q&V reconciliation;

- source documents to support its J&K GA November 2018 reconciliation;

- source documents to support its J&K IL October 2018 reconciliation;

- source documents to substantiate the reported sales terms and freight expenses for five of six sales traces;

- source documents to demonstrate the reported destination of one of six sales traces; and

- source documents to demonstrate the reported customer codes of one of six sales traces.

2) Commerce claims to have identified the following errors in Meisen's ILVQR:

- incorrect destinations (i.e., ZIP codes reported in the field DESTU) for four of six sales traces and one of three CONNUM-specific reconciliations.

- incorrect consolidated customer codes;

- incorrect product characteristics for two of six sales traces and one of three CONNUM-specific reconciliations;

- incorrect entered values for three, or potentially four, of six sales traces;

- incorrect further manufacturing expenses for two of six sales traces; and

- incorrect date of shipment for one of six sales traces.

3) Commerce claims to have found other pervasive issues discovered in, or as a result of, Meisen's ILVQR are the following:

- Meisen incorrectly told Commerce that it was unable to report transaction-specific movement expenses, and, therefore, it relied on an allocation methodology

- Meisen incorrectly told Commerce that it was unable to report actual entered values of the merchandise sold by the J&K Companies, and, therefore, it relied on an alternative entered value reporting methodology; and

- Meisen failed to report at all of the affiliated entities involved in the sale and/or distribution of subject merchandise.

Final Remand Results at page 146-147.

## ARGUMENT

### A. Commerce Improperly Resorted to the Use of Total Adverse Facts Available

The Courts have held that "Commerce may apply facts available whenever there is a gap in the record." *Huvis Corp. v. United States*, 31 C.I.T. 1803, 1807 (2007).  The U.S. Court of International Trade has also held that any missing information must be necessary for the Department's determination. *Clearon Corp. v. United States*, 359 F.

Supp. 3d 1344, 1359 (Ct. Int'l Trade 2019) *citing* 19 U.S.C. § 1677e(a)(1)

"(authorizing the use of facts available if 'necessary information is not

available on the record'), (b) (authorizing use of adverse inferences)."

Moreover, the Department may apply adverse inferences only if it finds

that a party did not cooperate to the best of its ability:

> If the administering authority or the Commission (as the
> case may be) finds that an interested party has **failed to
> cooperate by not acting to the best of its ability** to comply
> with a request for information from the administering
> authority or the Commission, the administering authority or
> the Commission (as the case may be), in reaching the
> applicable determination under this subtitle-- (A) **may use
> an inference that is adverse to the interests of that party in
> selecting from among the facts otherwise available**; and (B)
> is not required to determine, or make any adjustments to, a
> countervailable subsidy rate or weighted average dumping
> margin based on any assumptions about information the
> interested party would have provided if the interested party
> had complied with the request for information.

19 U.S.C § 1677e(b) (emphasis added).  The Courts have held,

"{c}ompliance with the 'best of its ability' standard is determined by

assessing whether the respondent puts forth its maximum effort to

provide Commerce with full and complete answers to all inquiries in an

investigation" *Guizhou Tyre Co., Ltd. v. United States*, 348 F.Supp.3d

1261, 1270 (Ct. Int'l Trade 2018).

PUBLIC VERSION

The best of its ability standard also does not require perfection. The standard "does not condone inattentiveness, carelessness, or inadequate record keeping," but it also "does not require perfection and recognizes that mistakes sometimes occur." *Nippon Steel Corp. v. United States*, 337 F.3d 1373, 1382 (Fed. Cir. 2003). The Department also "may not…characterize a party's failure to provide information that does not exist as a 'refusal' to provide data." *AK Steel Corp. v. United States*, 21 C.I.T 1204, 1223 (1997).

Moreover, the question of whether a respondent has cooperated to the "best of its ability" is case-specific, and an AFA rate is not based on the conduct of a "hypothetical, well-resourced respondent." *Nat'l Nail Corp. v. United States*, 390 F. Supp. 3d 1356, 1373 (June 12, ,2019). "{A} reviewing court must be able to conclude that Commerce looked at the respondent's ability to comply as well as its performance in complying." *Id.* "An adverse inference may not be drawn merely from a failure to respond, but only under circumstances in which it is reasonable for Commerce to expect that more forthcoming responses should have been made; i.e., under circumstances in which it is

PUBLIC VERSION

reasonable to conclude that less than full cooperation has been shown."
*Nippon Steel Corp.* 337 F.3d at 1383.

Even where Commerce properly finds the respondent failed to act to the best of its ability and that, therefore, an adverse inference can be drawn, Commerce has a continuing obligation to balance the statutory objective of finding an accurate dumping margin with the goal of inducing compliance. *See F.lli De Cecco Di Filippo Fara S. Martino S.p.A. v. United States,* 216 F.3d 1027, 1032 (Fed. Cir. 2000); *Chia Far Indus. Factory Co., Ltd. v. United States,* 343 F. Supp. 2d 1344, 1366 (Ct. Int'l Trade, 2004).  Commerce's discretion is not unbounded and it must consider whether the assigned rate creates an overly punitive result. *See Chia Far Indus. Factory Co.,* 343 F. Supp. 2d at 1366.  Commerce has provided no such analysis here.

Commerce must also explain why adjusting the data based on partial facts available or partial adverse facts available would not have been a sufficient remedy.  The Court has previously recognized that "{t}he facts available statute is designed to reach a reliable margin, even in the face of an uncooperative respondent." *Ferro Union, Inc. v. United States*, 23 C.I.T. 713, 721 (1999).  The Court has found the use

PUBLIC VERSION

of partial adverse facts available appropriate where a respondent only failed to provide information in one respect and that, in such cases, the use of only partial adverse facts available is more likely to be an accurate reflection of the company's sales than other information. *Id.* The Court has held that the use of total adverse facts available was not permissible where there was usable information on the record.

> Although the statute provided for a picking-and-choosing process, this Court has sustained Commerce's use of total adverse facts available where (1) the record contained no usable information for core components of Commerce's dumping analysis (as where the respondent simply did not answer the questionnaire) and (2) substantial evidence showed that the respondent was egregious in its failure or refusal to comply with Commerce's requests for information (as where the respondent concealed information requested by Commerce). (citations omitted). Where, on the other hand, some of the information could be used, or the deficiency was only "with respect to a discrete category of information," and a respondent is found not to have complied to the best of its ability, the use of "partial adverse facts available" is directed by the statute. (citation omitted).

*Nat'l Nail Corp.,* 390 F.Supp.3d at 1375.

In this, case Commerce should have considered alternatives to total AFA, including the use of partial facts available, with or without an adverse inference. Unlike most cases, Commerce was dealing with multiple small retailers with unsophisticated accounting systems and a very large number of sales.   Moreover, the scope of the investigation covered cabinets, vanities, and components with

PUBLIC VERSION

innumerable variations that made it unusually difficult to group products in the

Department's CONNUMs.   Given the difficulties, Meisen and the J&K companies

cooperated to the best of their ability in this investigation.   Given these limitations,

it is unreasonable for Commerce to require the level of perfection that it has

required of Meisen and resort to total AFA when that level of perfection cannot be

satisfied.

### B. Commerce Should Have Issued a Supplemental ILVQ

Many of the issues raised by Commerce above would have been

handled differently during an on-site verification where there is an

interaction between Commerce and the company officials.  In an in-

person verification, questions and follow-up questions would have been

raised verbally and answers would have been provided along with

supplemental documentation if needed.   Since Commerce switched to

written verification questionnaires during the pandemic, such

interaction is no longer possible and Commerce has apparently refused

to issue supplemental verification questionnaires, at least to Meisen.

This procedure, however, is contrary to the statute, which provides the

following

> {i}f the administering authority ... determines that a
> response to a request for information under this subtitle

PUBLIC VERSION

> does not comply with the request, the administering
> authority ... shall promptly inform the person submitting the
> response of the nature of the deficiency and shall, to the
> extent practicable, provide that person with an opportunity
> to remedy or explain the deficiency in light of the time limits
> established for the completion of ... reviews under this
> subtitle.

19 U.S.C. § 1677m(d).  The courts have previously held that this

statutory requirement is not ambiguous.  *China Kingdom Imp. & Exp.*

*Co. v. United States*, 31 C.I.T. 1329, 1344–45 (2007).  The courts will

not endorse "an investigation where {Commerce} sent out a general

questionnaire and a brief deficiency letter, then effectively retreated

into its bureaucratic shell, poised to penalize {respondent} for

deficiencies not specified in the letter that {Commerce} would only

disclose after it was too late, i.e., after the preliminary determination."

*Bowe–Passat v. United States,* 17 CIT 335, 343 (1993) ("…the review

process is bilateral and interactive. The party must be afforded a

reasonable opportunity, however, to meet its burden and to satisfy

evidentiary concerns known only by the ITA staff."); *Usinor Sacilor v.*

*United States,* 19 CIT 711, 745, 893 F.Supp. 1112, 1141–42 (1995) , *aff'd*

*in part and rev'd in part,* 1999 WL 641231 (Fed.Cir. Aug. 24, 1999)

(Commerce failed to notify plaintiff that it lacked necessary information

PUBLIC VERSION

to assess likely effects of subsidy program in countervailing duty case; plaintiffs not aware of deficiency until issuance of final results).

In this case, Commerce issued a questionnaire to Meisen but declined to issue any follow-up questions or inform Meisen of any deficiencies in its response.   Such a procedure is not in accordance with the statute or this Court's prior decisions.  As a result, the Court should remand the issue to Commerce again to give Meisen a fair opportunity to obtain a company specific margin calculated using the voluminous amount of information that Meisen placed on the record of this case.

### C. Commerce Erred in finding that Meisen Failed to Provide Requested Source Documents

Commerce's characterization of the substantial documentation placed on the record as a "failure" is not supported by the record. Meisen and its U.S affiliates placed, not a handful of pages on the record, but over 5000 pages of documentation in just the ILVQR.  In Lieu of Onsite Verification Questionnaire Response, dated March 9, 2022 (RCD 156-329, RPD 37), Appx__.  The total amount of information placed on the record throughout the investigation and remand is far greater.

Commerce claims that Meisen failed to provide source documentation to support the J&K GA and J&K IL reconciliations. Commerce's main complaint seems to be that the companies provided excel files instead of screenshots from its accounting system as requested in the questionnaire.  *See e.g.* Final Remand results at 15, 21, and 23.   However, the excel files were in fact extracts from Quickbooks, the accounting system used by the companies.   *See* In Lieu of Onsite Verification Questionnaire Response, dated March 9, 2022 at Exhibit SVE-4 (Step 1B).   (RCD 156-329, RPD 37), Appx__.  Given that it was providing such extracts, Meisen reasonably believed that there was no need for the companies to also submit a screenshot of the computer screen which could only show parts of the information in the excel files.

That *is* the source documentation that is maintained in the normal course of business and Meisen cooperated to the best of its ability in attempting to respond to the Department's verification questionnaire in the limited time allotted.   The J&K Companies are not a multi-national steel or manufacturing facility.  They are effectively seventeen different "Mom & Pop" enterprises that use accounting software for small enterprises because (1) it is easy to operate; and (2) it

PUBLIC VERSION

allows files to be extracted to Excel which is a familiar software for even those individuals without an accounting or financial background.   To the extent that Meisen added additional cells and formulas to the excel file, it was merely to ensure that the Department understood Meisen's calculations.   The fact that Meisen provided such extracts instead of simply screen shots is not a failure that rises to the level of justifying total adverse facts available

With respect the above and to the other source document complaints by Commerce, Meisen believed that it had provided all source documentation that was available in its normal course of business.  As argued further below, to the extent that the Department needed additional information or alternative information, it was required to issue a supplemental questionnaire under the statute, regardless of the fact that the information was provided in an verification questionnaire.   Had these issues arisen in an on-site verification, Commerce's concerns would have been expressed verbally to the companies and they would have had the opportunity to provide Commerce with the documents it wanted.

PUBLIC VERSION

### D. The Alleged Errors Identified by Commerce Do Not Justify the Application of Total AFA

Commerce also complains about various errors in the sales database provided by Meisen with respect to certain fields.  Final Remand Results at 28.  As shown below, these errors did not justify the application of total AFA, either alone or in combination.  These errors have to be considered in light of the unsophisticated accounting system employed by Meisen's U.S. affiliates and the number of sales that they had to report.  Meisen and the J&K Companies reported information for over [        ] individual U.S. sales in as accurate a manner as possible.  Supplemental Section C Questionnaire Response, dated August 28, 2019, at U.S, Sales Database (CD 1197-1225, PD 1164), Appx__.  In light of these limitations, Meisen cooperated to the best of its ability.  Even to the extent that the errors constituted a significant portion of the sample, Commerce does not establish that any errors resulted in a lower dumping margin than otherwise would have been calculated or benefited Meisen in any way.

PUBLIC VERSION

1.        **Sales Terms**

Commerce found that Meisen failed to provide documentation to demonstrate the accuracy of the reported sales terms for five of the six sales traces provided in its ILVQR.  Final Remand Results at 30.  Contrary to the Department's assertions, Meisen provided all source documentation for sales terms that was available in its normal course of business for the six sales traces. Furthermore, Commerce should have requested additional information if it did not understand the information submitted in the ILVQR.  As an example, Commerce states that it is was "not clear *how* the packing slip demonstrates the sales terms or how other sales documents provide any insight into the sales terms of this transaction (*e.g.*, the sales invoice contains a "pick up date" and a "ship" date and they are the same)."  Final Remand Results at 30.   The Department could have asked additional questions as it no doubt would have at an on-site verification.

Moreover, as explained in Meisen's comments on the draft remand redetermination, the five sales traces that the Department found to have insufficient supporting documentation represent only [          ] of the total sales quantity.  Comments on the Draft Remand

Redetermination, dated May 16, 2022 at 13 (RCD 350, RPD 66),

Appx__.  It was inappropriate to apply AFA to all U.S. sales on the basis

of this negligible quantity of sales.  This minute portion of sales with

errors cannot be said to have tainted the whole sales database.  Nor

does Commerce establish that any errors resulted in a lower dumping

margin or in any way benefited Meisen.

### 2.    Destination

Commerce states that there were errors in the reported

destination for four of the six stales traces and one of the three

CONNUM specific reconciliations.   Final Remand Results at 35.

Meisen provided all of the requested source documentation for the

reported destination that was available in its normal course of business

for the six sales traces and the three CONNUM-specific product

reconciliation traces.  Moreover, for some of the sales traces with

inconsistent zip codes, the different zip codes still belong to the same

region of the U.S. for purpose of differential pricing, and therefore, has

no impact on the results of differential pricing analysis.  Final Remand

Results at 35-37.   The sales that impact the differential pricing

analysis represent a small percentage of the total sales quantity.

PUBLIC VERSION

Comments on the Draft Remand Redetermination, dated May 16, 2022 at 14 (RCD 350, RPD 66), Appx__.  Again, a trivial difference is no reason to apply AFA to all U.S. sales nor does Commerce establish that any errors resulted in a lower dumping margin or in any way benefited Meisen.

### 3.   Purchaser

Commerce complains that Meisen only notified it of how it developed its list of consolidated customer codes in the ILQV but does not explain how else Meisen could have developed such a list given that it had numerous affiliated companies with a large number of customers and limited knowledge of which of those customers might be affiliated. Commerce merely requested that Meisen report consolidated customer names and codes, "ensuring that each customer is assigned only one discrete code".  Final Remand Results at 39.  It did not instruct Meisen on how to develop such a list under the circumstances.   Such errors can and do occur simply due to the overwhelming volume of data that had to be compiled and reported during the course of this proceeding nor does Commerce establish that any errors resulted in a lower dumping margin or in any way benefited Meisen.

.   4.   **Product Characteristics**

Commerce claims that Meisen reported incorrect product characteristics for two of the four sales traces and one of the three CONNUM-specific reconciliations. Final Remand Results at 43. However, as Meisen explained, its CONNUM reporting methodology was reasonable. Commerce seems to assume that products as complex and variable as a cabinet, vanity, or components can be neatly fit into its limited number of product characteristics. But Meisen fully and reasonably explained why this was not possible. Commerce argues that Meisen should have contacted Commerce for instructions, but it is simply not realistic for Meisen to contact Commerce and wait for a reply for each and every product where there are complications given the sheer number of product variations and the limited time available to respond to the questionnaires.

As Meisen explained, with respect to sales trace 4, the Department requested that Meisen report this product with the CONNUMU of the product imported, not the product sold. This product consisted of a custom-made and further manufactured hood product. However, Commerce assumes that that this custom-made product

PUBLIC VERSION

which was assembled after importation could be directly linked to an imported product or related product during the POI, an assumption that is not valid because there was no need for Meisen to track such products in the normal course of business. As explained in the ILVQR, J&K NJ never imported this product but instead custom assembled the product using pieces from other cabinets with leftover side-panels and parts from damaged products that were imported well before the POI. *See* ILVQR at 15. Given these facts, Meisen believes it was appropriate and reasonable to report the CONNUM of the closest product with similar characteristics, which is the hood itself. This reasonable approach is hardly a failure to cooperate. Commerce again suggests that Meisen should have contacted Commerce for instructions. Final Remand Results at 116. However, even in the final remand results after having several weeks to consider the issue, Commerce states that "{t}his is a complicated fact pattern, and we cannot at this late stage of the proceeding determine the precise way in which Meisen should have reported this information for this specific transaction, or even whether it was appropriate to even report this as a sale of Meisen's merchandise at all." Final Remand Results at 116.

24

With respect to sales trace 5, the customer purchased only the

[                              ] for this transaction but was [

                              ]. *See* ILVQR at 15.  Due to the

Department's specific instructions when preparing the CEP response to

include the specifics of the merchandise actually shipped, the

information was populated in the CEP database using the physical

characteristics of a comparable product. *Id.*  The Department

acknowledges that it did not identify product characteristic coding

options applicable to the [                              ]. *See* Draft Remand

Redetermination at 42.  Nevertheless, the Department claims that the

Meisen should have notified Commerce of this issue or created a new

product code itself as it did with the surface coating of certain products.

*Id.*  However, a comparable product existed and Meisen believes it was

reasonable to use the CONNUM of that matching product.  Moreover,

even accepting that this was an error, the percentage impact would be

minor and insignificant and should not serve as the bases of the

application of total AFA.

With respect to CONNUM Trace 3, Commerce states that Meisen

reported the product characteristics of the further manufactured

PUBLIC VERSION

product and not the imported product.  Final Remand Results at 119.

Given the actual facts surrounding this sale, Meisen and the J&K

companies continue to believe that they reported the most appropriate

CONNUM under the circumstances to reflect the product

characteristics of a product produced and imported that would match

the final product sold.  Final Remand Results at 119.  Moreover, even

accepting that this was an error, the percentage impact would be minor

and insignificant and should not serve as the bases of the application of

total AFA. Nor does Commerce establish that any errors resulted in a

lower dumping margin or in any way benefited Meisen.

These are the type of issues that Commerce would have raised and

Meisen would have explained at an in-person verification.   It is

noteworthy that Commerce accepted the explanation provided by

Meisen in its comments on the draft remand results with respect to the

product characteristics for CONNUM-reconciliation two.  Final Remand

Results at 115.

PUBLIC VERSION

### 5.    Entered Values

Commerce questions the accuracy and completeness of Meisen and J&K's reported entered values.  Final Remand Redetermination at 50. First, to put the importance of any errors in perspective, the entered values in an original investigation are not used to calculate importer specific assessment rates. *See* 19 U.S.C. §1677a.  The entered values in an original investigation are used to calculate certain price adjustments but minor differences in the entered value would not have a substantive impact on the price adjustments for warranty expenses, U.S. customs duty, Section 301 duties, and inventory carrying costs because each of those variables are already based upon an allocation methodology and are never based upon a single invoice or line-item specific fixed amount.

Meisen acted to its best ability in reporting accurate entered values on the U.S. database which were used by Commerce to calculate these price adjustments.  The J&K Companies do not track and correlate the imported product on a transaction specific basis to the product that is sold to the individual J&K Companies' unaffiliated customers. *See* Meisen's Letters, REM 21-158 Third Supplemental Section C

Questionnaire, dated January 11, 2022 at 49-50 (RCD 3-19, RPD 11), Appx___.
This is not information that is maintained in its QuickBooks systems
but had to be manually populated by each J&K entity separately and
individually. *See* REM 21-158 Fourth Supplemental Section C Questionnaire,
dated February 14, 2022 at Exhibit R2C2 (RCD 100-127, RPD 28-29), Appx___.
The larger question is whether any such errors had a material effect on
the ability of Commerce to calculate an accurate dumping margin. In
this case the answer to that is a resounding "no."

### 6.   Further Manufacturing Expenses

Commerce contends that Meisen did not accurately report further
manufacturing expenses. Final Remand Results at 54. Meisen acted to
the best of its ability in reporting accurate further manufacturing
expense on the U.S. database. The two sales traces that the Department
identified that should have further manufacturing expenses reported
represent only a small percentage of the total sales quantity and cannot
be used to indicate that the whole database is by extension inaccurate
nor does Commerce establish that any errors resulted in a lower
dumping margin or in any way benefited Meisen.   It is thus

inappropriate for the Department to apply AFA to all U.S. sales based upon such an error.

### 7.    Date of Shipment

Commerce claims that Meisen incorrectly reported the shipment date for one of the six sales traces.  Final Remand Results at 54.  Even if true, this is hardly sufficient reason to impose adverse facts available.  Nor did Commerce allow Meisen to explain its reporting methodology or why it chose the date of sale as the shipment date.   Again, if this had been an on-site verification, Commerce could have verbally informed Meisen of the issue and given it an opportunity to explain.  Nor does Commerce establish that any errors resulted in a lower dumping margin or in any way benefited Meisen.  Absent an on-site verification, Commerce should have followed the requirements of the statute at 19 U.S.C. 1677m(d) and issued a supplemental questionnaire.

### 8.    Freight Expenses

Commerce claims that Meisen failed to report transaction-specific freight expenses.  Final Remand Results at 92.   Considering the time limitations and the limitations of the J&K Companies' accounting

systems, it was not reasonable to require Meisen to report transaction-specific inbound freight expenses, nor would it have been possible for Meisen to report these expenses on a transaction-specific basis.  In light of these facts, it was reasonable for Meisen to resort to an allocation methodology.  There simply were no books and records upon which to base such a report. Nor does Commerce establish that any errors resulted in a lower dumping margin or in any way benefited Meisen.

### 9.   Affiliates

Commerce claims that Meisen failed to report all of its affiliates during the period of investigation.  Final Remand Results at 57. Commerce claims that Meisen failed to report at least one company [

] and failed to disclose "potentially significant transactions with J&K NY's largest U.S. customer, [

]…" Id. This conclusion once again is based on new factual information that Commerce put on the record after verification and about which Commerce never addressed any specific questions to Meisen.

With respect to [                    ], the property was an investment by the individual that owned one of Meisen's U.S. affiliates, [

]. Meisen's Letter, "Comments on New Factual Information," dated April 6, 2022 at 13 (RCD 343-346, RPD 54), Appx__. Moreover, Meisen and the J&K Companies have already shown the fact that [

] was not involved in the sale of the merchandise under investigation during the POI and that it did not have sales during the POI as it was a holding company. Id. at Exhibit NFI-16. The failure to report this affiliate sooner was clearly a minor oversight resulting from the fact that the company was not involved in the sale of subject merchandise.  Furthermore, Commerce has not established how this oversight in any way affected the dumping calculations.

With respect to [                    ], Commerce only claims that it "could be another unreported J&K Company (or an affiliate)…"  Final Remand Results at 66.   Commerce cannot, however, base such a drastic punishment, total AFA, on supposition or conjecture about what "could" be the case.   Commerce should have asked for additional information or explanations rather than simply placing factual information on the record and then turning around and using that information to make a supposition to support the application of total AFA.

PUBLIC VERSION

## CONCLUSION

Thus, for these reasons, we respectfully request that the Court remand the case to Commerce for reconsideration to correct for errors raised in this brief.

Respectfully submitted,

/s/Jeffrey S. Neeley
Jeffrey S. Neeley
Nithya Nagarajan
Stephen W. Brophy
**Husch Blackwell LLP**
750 17th St., NW, Suite 900
Washington, DC 20006
(202) 378-2409
Jeffrey.Neeley@huschblackwell.com

*Counsel for Plaintiff Dalian Meisen Woodworking Co., Ltd.*

PUBLIC VERSION

## CERTIFICATE OF COMPLIANCE

Pursuant to Chamber Procedure 2(B)(2), the undersigned certifies that this submission complies with the word limitation requirement. The word count for this submission, as computed by Husch Blackwell's word processing system Microsoft Word 2019, is 5,889 words.

/s/ Jeffrey S. Neeley

Jeffrey S. Neeley
Husch Blackwell LLP
*Counsel for Plaintiff Dalian Meisen Woodworking Co., Ltd.*