IN THE UNITED STATES COURT OF INTERNATIONAL TRADE
BEFORE: THE HONORABLE M. MILLER BAKER, JUDGE

| | |
|---|---|
| DALIAN MEISEN WOODWORKING CO., LTD., | |
| *Plaintiff,* | |
| CABINETS TO GO, LLC, | Ct. No. 20-00109 |
| *Plaintiff-Intervenor,* | |
| v. | |
| UNITED STATES, | |
| *Defendant,* | |
| AMERICAN KITCHEN CABINET ALLIANCE | |
| *Defendant-Intervenor.* | |

**PLAINTIFF-INTERVENOR'S COMMENTS IN OPPOSITION TO REMAND**

Mark Ludwikowski
R. Kevin Williams
William Sjoberg
CLARK HILL, PLC

1001 Pennsylvania Avenue, NW
Suite 1300
Washington, DC 20004

August 29, 2022

**TABLE OF CONTENTS**

I.   INTRODUCTION ................................................................................................... 1
II.  SUMMARY OF ARGUMENT ............................................................................... 1
III.  STANDARD OF REVIEW ..................................................................................... 2
IV.  ARGUMENT ........................................................................................................... 4
V.  CONCLUSION ....................................................................................................... 6

# TABLE OF AUTHORITIES

**Cases**

*Changzhou Wujin Fine Chem. Factory Co. v. United States*, 701 F.3d 1367 (Fed. Cir. 2012)…..3

*Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837 (1984)................................. 3

*Dongtai Peak Honey Indus. Co. v. United States*, 971 F. Supp. 2d 1234 (Ct. Int'l Trade 2014))...3

*Gerald Metals, Inc. v. United States*, 132 F.3d 716 (Fed. Cir. 1997)……………………………..2

*Guizhou Tyre Co. v. United States*, 415 F. Supp. 3d 1335 (Ct. Int'l Trade 2019)…..………….5

*Hartford Fire Ins. Co. v. United States*, 772 F.3d 1281 (Fed. Cir. 2014)…………………………4

*Jiangsu Jiasheng Photovoltaic Tech. Co. v. United States*, 28 F. Supp. 3d 1317 (Ct. Int'l Trade 2014)……………………………………………………………………………………………3

*Mid Continent Nail Corp. v. United States*, 846 F.3d 1364 (Fed. Cir. 2017)………..…………3

*Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29 (1983)……………...4

*Nat'l Nail Corp. v. United States*, 390 F. Supp. 3d 1356, 1372-73 (Ct. Int'l Trade 2019)………..5

*Nippon Steel Corp. v. United States*, 337 F.3d 1373 (Fed. Cir. 2003)…………………………….2

*NTN Bearing Corp. v. United States*, 74 F.3d 1204 (Fed. Cir. 1995)……………………………..3

*Pakfood Pub. Co. v. United States*, 724 F. Supp. 2d 1327 (Ct. Int'l Trade 2010)………………...3

*Pro-Team Coil Nail Enter. v. United States*, No. 18-00027, 2019 WL 7167536, at *10 (Ct. Int'l Trade  2019)……………………………………………………………………………………5

*Robert Bosch LLC v. Pylon Mfg. Corp.*, 659 F.3d 1142 (Fed. Cir. 2011)………………………..4

*Royal Thai Gov't v. United States*, 502 F. Supp. 2d 1334 (Ct. Int'l Trade 2007)………………..4

*SKF USA Inc. v. United States*, 263 F.3d 1369 (Fed. Cir. 2001)………………………………….4

*Ta Chen Stainless Steel Pipe, Inc. v. United States*, 298 F.3d 1330 (Fed. Cir. 2002)…………….6

*Timex V.I., Inc., v. United States*, 157 F.3d 879 (Fed. Cir. 1998)………………………………3

*Timken U.S. Corp. v. United States*, 421 F.3d 1350 (Fed. Cir. 2005)………..…………………..4

*Transactive Corp. v. United States*, 91 F.3d 232, 237 (D.C. Cir. 1996)……………………………….4

*Universal Camera Corp. v. NLRB*, 340 U.S. 474 (1951)…………………………………………2

*Zhejiang DunAn Hetian Metal Co. v. United States*, 652 F.3d 1333 (Fed. Cir. 2011)………..…..2

**Statutes**

19 U.S.C. §1516a(b)(1)(B)(i)…………………………………………………………………...2

19 U.S.C. § 1673d(c)(5)(A) ........................................................................................................ 1

19 U.S.C. § 1677e(b)(1)(A)…………………………………………………………………..5

## I. INTRODUCTION

On behalf of Cabinets To Go, LLC ("CTG" or "Plaintiff Intervenor"), and pursuant to this Court's July 13, 2022 remand Scheduling Order, ECF No. 85, we submit Plaintiff Intervenor's comments in opposition to the Final Results of Redetermination Pursuant to Court Remand ("Final Remand Results") filed by the U.S. Department of Commerce ("Commerce") on June 6, 2022, ECF No. 79. Plaintiff Dalian Meisen Woodworking Co., Ltd. ("Meisen") filed comments in opposition to the Final Remand Results on August 15, 2022, ECF 86.

## II. SUMMARY OF ARGUMENT

In the Final Remand Results, Commerce again assigned Meisen an antidumping ("AD") margin based on total adverse facts available ("AFA") and the highest dumping margin on the investigation record, 262.18 percent. Since Commerce did not recalculate an AD margin for Meisen, it also did not recalculate the AD margin assigned to CTG's suppliers.

Pursuant to 19 U.S.C. § 1673d(c)(5)(A), a rate calculated by Commerce for successful separate rate applicants is the weighted-average rate of mandatory respondents' rates, other than zero and de minimis margins, and any margins determined entirely on AFA. Accordingly, since Meisen's rate on remand continues to be based entirely on AFA, this presents a status quo for separate rate respondents which are CTG's suppliers.

Nonetheless, CTG opposes Commerce's AFA finding for Meisen which fully cooperated with Commerce's multiple and extensive supplemental questionnaires issued after the Court's remand. CTG supports and incorporates herein the facts and arguments made by Meisen in its comments in opposition to the Final Remand Results and does not repeat them as they are specific to Meisen. However, CTG expressly disagrees with Commerce's AFA finding for Meisen which is unwarranted based on evidence that Meisen and its affiliates cooperated to the

1

best of their ability and were not granted the opportunity to supplement the record. Accordingly, CTG respectfully requests that this Court issue a further remand to Commerce to provide Meisen with a fair opportunity to address complaints and remaining issues raised by Commerce.

### III.     STANDARD OF REVIEW

The standard of review, as set forth in 19 U.S.C. §1516a(b)(1)(B)(i), requires the Court to examine whether the determinations, findings or conclusions of Commerce were "unsupported by substantial evidence on the record, or otherwise not in accordance with law."

The substantial evidence standard requires Commerce to base its determination upon "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.[1] This standard "requires more than mere assertion of 'evidence which in and of itself justified {the determination}, without taking into account contradictory evidence or evidence from which conflicting inferences could be drawn.'"[2] The existence of substantial evidence must be determined in view of the record as a whole, including "whatever in the record fairly detracts from its weight."[3]

Review of Commerce's interpretation of the antidumping statute is governed by the twostep framework described in *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc*.[4] First, the Court must review the language of the statute, as illuminated by traditional tools of statutory construction and legislative history (where appropriate) to determine congressional

---

[1] *Zhejiang DunAn Hetian Metal Co. v. United States*, 652 F.3d 1333, 1340 (Fed. Cir. 2011) (quoting *Nippon Steel Corp. v. United States*, 337 F.3d 1373, 1379 (Fed. Cir. 2003)).

[2] *Gerald Metals, Inc. v. United States*, 132 F.3d 716, 720 (Fed. Cir. 1997) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)).

[3] *Id*. (quoting *Universal Camera*, 340 U.S. at 488 (internal quotation marks omitted)).

[4] *Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc*., 467 U.S. 837 (1984).

intent.[5] Where that intent may be determined, it must be given effect.[6] Should the Court determine that the statute is ambiguous with regard to the question at issue, the Court must determine "whether the agency's answer is based on a permissible construction of the statute."[7]

Commerce also acts unlawfully if it abuses its discretion or acts arbitrarily.[8] The Court has explained that "{a}n abuse of discretion occurs where the decision is based on an erroneous interpretation of the law, on factual findings that are not supported by substantial evidencem or represent an unreasonable judgment in weighing relevant factors."[9] "{A} clear error of judgment occurs when an action is 'arbitrary, fanciful, or clearly unreasonable.'"[10] The obligation to avoid arbitrary action requires Commerce to engage in reasoned[11] and evenhanded decision-making.[12]

---

[5] *See Timex V.I., Inc., v. United States*, 157 F.3d 879, 882 (Fed. Cir. 1998).

[6] *See id.* at 881-82

[7] *Chevron*, 467 U.S. at 843.

[8] *See, e.g., Mid Continent Nail Corp. v. United States*, 846 F.3d 1364, 1372 (Fed. Cir. 2017) ("Commerce's decision will {also} be set aside if it is arbitrary and capricious." (alteration in original) (quoting *Changzhou Wujin Fine Chem. Factory Co. v. United States*, 701 F.3d 1367, 1374 (Fed. Cir. 2012))); *NTN Bearing Corp. v. United States*, 74 F.3d 1204, 1207-08 (Fed. Cir. 1995) (remanding where Commerce's refusal to accept corrective information constituted an abuse of discretion); *Pakfood Pub. Co. v. United States*, 724 F. Supp. 2d 1327, 1337 (Ct. Int'l Trade 2010) ("{W}here an agency is afforded a measure of discretion in administering a statute, the exercise of that discretion is not in accordance with law if it is arbitrary . . . .").

[9] *Jiangsu Jiasheng Photovoltaic Tech. Co. v. United States*, 28 F. Supp. 3d 1317, 1323 (Ct. Int'l Trade 2014) (quoting *Dongtai Peak Honey Indus. Co. v. United States*, 971 F. Supp. 2d 1234, 1239 (Ct. Int'l Trade 2014)).

[10] *Hartford Fire Ins. Co. v. United States*, 772 F.3d 1281, 1286 (Fed. Cir. 2014) (quoting *Robert Bosch LLC v. Pylon Mfg. Corp.*, 659 F.3d 1142, 1147-48 (Fed. Cir. 2011)).

[11] *Timken U.S. Corp. v. United States*, 421 F.3d 1350, 1355 (Fed. Cir. 2005) ("{T}he agency must examine the relevant data and articulate a satisfactory explanation for its action including a rational connection between the facts found and the choice made." (alteration in original) (quoting *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983))).

## IV. ARGUMENT

In the Final Remand Results Commerce again assigned Meisen a margin based on a total AFA finding that the information provided by Meisen could not be verified and was unreliable. Commerce's selection of the highest transaction-specific dumping margin on the record as the AFA rate for Meisen similarly was not supported by substantial evidence or otherwise in accordance with law. Commerce failed to articulate any rationale for why the highest transaction-specific margin on the record was an appropriate AFA rate. Furthermore, the facts show that Meisen and its affiliates (J&K Companies) were trying to cooperate with Commerce. Meisen's responsiveness to Commerce's requests for information did not warrant application of the highest rate possible, and the 262.18 percent total AFA rate was unduly punitive as applied to Meisen. The total AFA rate is therefore not supported by substantial evidence.

As Meisen indicated in its comments in opposition to the Final Remand Results, Meisen cooperated to the best of its ability and was not afforded by Commerce the opportunity to address any perceived deficiencies in the record since Commerce did not issue follow-up questions or supplemental questionnaires to the company. ECF No. 86, at 16. Meisen also provided Commerce with thousands of pages of information on remand in response to Commerce's questionnaires. This extensive documentation demonstrates that Meisen cooperated to the best of its ability on the record provides contradictory evidence to Commerce's basis for an AFA finding. Meisen clearly cooperated and was not given the opportunity to fill in any gaps in the record that Commerce may have identified.

---

[12] *SKF USA Inc. v. United States*, 263 F.3d 1369, 1382 (Fed. Cir. 2001) ("{A}n agency action is arbitrary when the agency offer{s} insufficient reasons for treating similar situations differently." (quoting *Transactive Corp. v. United States*, 91 F.3d 232, 237 (D.C. Cir. 1996))); *Royal Thai Gov't v. United States*, 502 F. Supp. 2d 1334, 1341 (Ct. Int'l Trade 2007) ("Commerce may not treat two like situations differently without explanation.").

Furthermore, the use of facts available, including when an adverse inference is involved, is intended to fill in gaps in the record. Yet rather than applying partial AFA to fill in that gap, Commerce rejected the entirety of Meisen's submitted information and based the entirety of Meisen's weighted average margin on AFA, Commerce's application of total AFA, instead of partial AFA, is not supported by the statute or the facts of record. The application of total AFA is therefore not supported by substantial evidence or otherwise in accordance with law.

Section 1677e(b)(1)(A) of Title 19 provides that if Commerce "finds that an interested party has failed to cooperate by not acting to the best of its ability to comply with a request for information," then Commerce, in reaching its determination, "may use an inference that is adverse to the interests of that party in selecting from among the facts otherwise available."[13] Commerce thus may not apply an adverse inference against a respondent unless there is a valid finding that the respondent failed to cooperate to the best of its ability in responding to Commerce's requests.[14]

> This Court summarized Commerce's ability to apply an adverse inference as follows:
>
> However, "{a}n adverse inference may not be drawn merely from a failure to respond" to a request for information, "but only under circumstances in which it is reasonable for Commerce to expect that more forthcoming responses should have been made; i.e., under circumstances in which it is reasonable to conclude that less than full cooperation has been shown." Nippon Steel, 337 F.3d at 1383. "A respondent can fail to respond because it was not able to obtain the requested information, did not properly understand the question asked, or simply overlooked a particular request," and such failure is not necessarily grounds for an adverse inference. Mannesmannrohren-Werke AG v. United States, 23 CIT 826, 841-42, 77 F. Supp. 2d 1302, 1316 (1999) (remanding AFA determination when Commerce never identified why a respondent's failure to respond to two aspects

---

[13] 19 U.S.C. § 1677e(b)(1)(A).

[14] *See, e.g., Pro-Team Coil Nail Enter. v. United States*, No. 18-00027, 2019 WL 7167536, at *10 (Ct. Int'l Trade Dec. 19, 2019); *Guizhou Tyre Co. v. United States*, 415 F. Supp. 3d 1335, 1342 (Ct. Int'l Trade 2019); *Nat'l Nail Corp. v. United States*, 390 F. Supp. 3d 1356, 1372-73 (Ct. Int'l Trade 2019).

of the questionnaire "were anything more than inadvertent omissions" and the "respondent sought to correct its deficiencies in responding to a supplemental questionnaire"). Rather, to determine whether "less than full cooperation has been shown," Commerce should "examine {the} respondent's actions and assess the extent of {the} respondent's abilities, efforts, and cooperation in responding to Commerce's requests for information." Nippon Steel, 337 F.3d at 1382.[15]

The Court has also explained that in order for Commerce to support the use of adverse facts available, "Commerce must do more than simply restate its findings ostensibly supporting the use of neutral facts available."[16]

To the extent that Commerce identified errors in Meisen's sales database, as Meisen explained those errors resulted from the unsophisticated accounting system used by its affiliates and were inadvertent. It does not diminish the fact that Meisen cooperated to the best of its ability under the circumstances. Meisen was trying its best to provide accurate information to Commerce, and the application of AFA to Meisen would not do anything to further the statute's purpose of creating "a deterrent to non-compliance," [17] which as far as can be seen is unnecessary to encourage any change in Meisen's responsiveness. Commerce's determination to apply an adverse inference was unsupported by substantial evidence, and the determination should be further remanded for reconsideration.

## V.     CONCLUSION

The application of total AFA to Meisen and Commerce's selection of the 262.18 percent total AFA rate are not consistent with the law and the facts of record. Despite the remedial

---

[15] *Pro-Team Coil Nail*, 2019 WL 7167536, at *14.

[16] Id. at *10.

[17] *Nat'l Nail Corp.*, 390 F. Supp. 3d at 1384 ("Finally, it bears repeating that the use of adverse inferences when determining a respondent's rate is intended to create 'a deterrent to noncompliance,' which as far as can be seen is not needed to encourage Shandong's efforts to supply requested information. (quoting *Ta Chen Stainless Steel Pipe, Inc. v. United States*, 298 F.3d 1330, 1340 (Fed. Cir. 2002)).

purpose of the dumping law, Commerce has wielded it in a manner that is unduly punitive. We respectfully request that the Court further remand this case to Commerce so that the agency may provide Meisen a fair and complete opportunity to fix the errors identified in Commerce's Final Remand Results.

                                                    Respectfully submitted,

                                                    <u>/s/ Mark Ludwikowski</u>
                                                    Mark Ludwikowski
                                                    R. Kevin Williams
                                                    William Sjoberg

                                                    *Counsel to Plaintiff-Intervenors*
                                                    *Cabinets To Go, LLC*

August 29, 2022

## CERTIFICATE OF COMPLIANCE

Pursuant to Chamber Procedure 2(B)(1), the undersigned certifies that this submission complies with the word limitation requirement. The word count for this submission, as computed by Clark Hill's word processing system Microsoft Office Professional, is <u>2599</u> words.

<u>/s/ Mark Ludwikowski</u>
Mark Ludwikowski

*Counsel to Plaintiff-Intervenors*
*Cabinets To Go, LLC*

August 29, 2022