**Slip Op. 23-60**

**UNITED STATES
COURT OF INTERNATIONAL TRADE**

**Court No. 20-00109**

DALIAN MEISEN WOODWORKING CO, LTD.,

*Plaintiff*,

and

CABINETS TO GO, LLC,

*Plaintiff-Intervenor*,

v.

UNITED STATES,

*Defendant*,

and

AMERICAN KITCHEN CABINET ALLIANCE,

*Defendant-Intervenor.*

Before: M. Miller Baker, Judge

**OPINION**

[The court denies the motions for judgment on the agency record filed by Plaintiff and Plaintiff-Intervenor, grants judgment on the agency record to Defendant and Defendant-Intervenor, and sustains the Department of Commerce's remand results.]

Dated: April 24, 2023

*Jeffrey S. Neeley* and *Stephen W. Brophy*, Husch Blackwell, LLP, of Washington, DC, on the papers for Plaintiff.

*Mark Ludwikowski*, *R. Kevin Williams*, and *William Sjoberg*, Clark Hill, PLC, of Washington, DC, on the papers for Plaintiff-Intervenor.

*Brian M. Boynton*, Principal Deputy Assistant Attorney General; *Patricia M. McCarthy*, Director; *Tara K. Hogan*, Assistant Director; and *Ioana Cristei*, Trial Attorney, Commercial Litigation Branch, Civil Division, U.S. Department of Justice of Washington, DC, on the papers for Defendant. Of counsel for Defendant was *W. Mitch Purdy*, Attorney, Office of Chief Counsel for Trade Enforcement & Compliance, U.S. Department of Commerce of Washington, DC.

*Luke A. Meisner*, Schagrin Associates of Washington, DC, on the papers for Defendant-Intervenor.

*Baker*, Judge: In this antidumping case, the court sustains the Department of Commerce's application of total facts otherwise available with an adverse inference as to a Chinese producer of wooden cabinets and vanities.

I

This is the sequel to *Dalian Meisen Woodworking Co. v. United States*, 571 F. Supp. 3d 1364 (CIT 2021), where Commerce punished Plaintiff and antidumping investigation respondent Dalian Meisen for false

advertising by imposing the steepest possible antidumping rate, 262.18 percent. Holding that "the Department lacks jurisdiction to police false advertising violations," *id.* at 1368, the court granted judgment on the agency record to Meisen and its supporting Plaintiff-Intervenor, Cabinets to Go. The accompanying remand instructions directed Commerce to

> reconsider its application of facts otherwise available with an adverse inference, including whether and to what extent it will use Plaintiff's submitted information in its antidumping calculations. Insofar as Commerce chooses to use Plaintiff's information, it must then undertake verification. Insofar as the Department recalculates Plaintiff's antidumping rate, it must also recalculate the rate for Plaintiff-Intervenor's suppliers accordingly.

ECF 72, at 1–2.[1]

## II

On remand, Commerce "re-examined" Meisen's original responses and "issued four supplemental questionnaires to Meisen identifying deficiencies in, and requesting clarification regarding, its previous

---

[1] "[T]he rate for Plaintiff-Intervenor's suppliers" refers to the statutory mechanism for calculating antidumping margins for successful separate-rate applicants in non-market economy proceedings. *See Dalian Meisen*, 571 F. Supp. 3d at 1374–75 & n.7.

responses." ECF 80-1, at 6. The Department then verified the company's new responses by issuing another questionnaire, which requested "documentation to support Meisen's record submissions." *Id.* at 6–7.[2]

In reviewing the company's responses, Commerce concluded that Meisen may have failed to disclose U.S. affiliates in Florida and New York. The Department then placed "new factual information" on the record and allowed the parties to comment. *Id.* at 7.

After receiving the parties' comments, Commerce issued a thorough 147-page remand determination reaffirming the imposition of the 262.18 percent antidumping duty. *See* ECF 79-1 (confidential), ECF 80-1 (public). The Department again applied total facts otherwise available with an adverse inference (total AFA),[3] but for reasons unrelated to false advertising.

The Department found that Meisen's reported information could not be verified and was so unreliable that it could not be used to calculate a dumping margin. ECF 80-1, at 7. Commerce further found that Meisen failed to provide "critical information" in its response to the verification questionnaire—including source documentation the Department expressly

---

[2] Normally, Commerce conducts verification on site in the exporting country. In this case, pandemic travel restrictions required verification via written questionnaire.

[3] For background on AFA, *see Dalian Meisen*, 571 F. Supp. 3d at 1370–71.

requested—and that the submission also revealed "significant, and pervasive, problems throughout Meisen's reported data, including the fact that Meisen's U.S. sales database contains many errors." *Id.* at 7–8. The Department also found that Meisen had failed to disclose all of its U.S. affiliates. *Id.* at 8.

Based on these findings, Commerce concluded that Meisen withheld requested information, significantly impeded the proceeding, and reported data that could not be verified, thus requiring use of facts otherwise available under 19 U.S.C. § 1677e(a)(2)(A), (C), and (D). *Id.* The Department also determined that Meisen's failure to cooperate to the best of its ability warranted application of an adverse inference under § 1677e(b). *Id.*

### III

The court has subject-matter jurisdiction under 28 U.S.C. § 1581(c).

In 19 U.S.C. § 1516a(a)(2) actions such as this, "[t]he court shall hold unlawful any determination, finding, or conclusion found . . . to be unsupported by substantial evidence on the record, or otherwise not in accordance with law." 19 U.S.C. § 1516a(b)(1)(B)(i). That is, the question is not whether the court would have reached the same decision on the same record—rather, it is whether the administrative record, taken as a whole, permits Commerce's conclusion.

> Substantial evidence has been defined as more than a mere scintilla, as such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. To determine if substantial evidence exists, we review the record as a whole, including evidence that supports as well as evidence that fairly detracts from the substantiality of the evidence.

*Nippon Steel Corp. v. United States*, 337 F.3d 1373, 1379 (Fed. Cir. 2003) (cleaned up).

In addition, Commerce's exercise of discretion in § 1516a(a)(2) cases is subject to the default standard of the Administrative Procedure Act, which authorizes a reviewing court to "set aside agency action, findings, and conclusions found to be . . . arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A); *see Solar World Americas, Inc. v. United States*, 962 F.3d 1351, 1359 n.2 (Fed. Cir. 2020) (explaining that in § 1516a cases, i.e., cases brought under section 516A of the Tariff Act of 1930, APA "section 706 review applies since no law provides otherwise") (citing 28 U.S.C. § 2640(b)).

IV

In substance, Meisen challenges the Department's final determination on three grounds: (1) Commerce erred in finding that Meisen failed to provide requested source documents, ECF 95, at 16–18; (2) the Department should have issued a supplemental

verification questionnaire, *id.* at 14–16; and (3) in any event, the deficiencies Commerce identified did not warrant the application of total AFA, *id.* at 13–14, 19–32. Related to the third ground, Cabinets to Go asserts that even if the Department correctly applied total AFA, the rate Commerce selected was too high and was not supported by adequate explanation. ECF 99, at 6–10.

A

For verification purposes, the Department selected two of Meisen's U.S. resellers—J&K Georgia and J&K Illinois—"and requested that Meisen provide source documentation supporting the worksheets it used to reconcile the total sales by these resellers during the [period of investigation] to their tax returns." ECF 80-1, at 12. Specifically, Commerce directed Meisen to submit "screenshots from [its] accounting system" to support every step of the reconciliation process, as well as other supporting documents to include "printouts and Excel versions of each companies' [sic] profit and loss statements, trial balances, and sales ledgers." *Id.* at 12–13 (emphasis removed). The Department also requested "[a] detailed narrative explaining how all worksheets and supporting documentation tie together." *Id.* at 13 (emphasis removed).

Commerce's remand determination explains that Meisen did not produce any of the requested screenshots or printouts from its accounting system, nor any source documentation to verify the figures provided in

its Excel worksheets. *Id.* at 14–15 (J&K Georgia), 23–24 (J&K Illinois). The Department noted that without source documentation, "the source of the data in each of these Excel files is unclear," *id.* at 20, and explained that it was impossible to reconcile the numbers seen in the Excel worksheets with other numbers in, for example, the company's profit and loss statements, *id.* at 17–18.

The Department emphasized that "Meisen failed to provide the requested source documentation necessary to verify that Meisen accurately and completely reported J&K [Georgia]'s total U.S. sales, as well as individually-selected sales made by J&K [Georgia] in November 2018 and J&K [Illinois] in October 2018." *Id.* at 27. Commerce further found that the record was clear that both companies had the necessary information available to them such that they could have produced it. *Id.* As a result, the Department found, citing 19 U.S.C. § 1677e(a)(2)(D), that it was necessary to resort to facts otherwise available because all of J&K Georgia's and J&K Illinois's sales were unverifiable because of the lack of source documentation, and the Department also elected to apply an adverse inference because Meisen "failed to act to the best of its ability by failing to provide source documentation that it had in its possession." *Id.* at 28.[4]

---

[4] Elsewhere, Commerce noted that the record showed that (1) the J&K Companies could have provided screenshots

Meisen's challenge to these findings is unavailing. The company first argues that it submitted over 5000 pages of material in response to the verification questionnaire and had previously submitted copious amounts of other material. ECF 95, at 16. That begs the question whether any of those materials were responsive to the Department's questionnaire.

Meisen also calls Commerce's concern about the company's provision of Excel spreadsheets instead of the requested screenshots unfounded: "[T]he [E]xcel files were in fact extracts from Quickbooks, the accounting system used by the companies. Given that it was providing such extracts, Meisen reasonably believed that there was no need for the companies to also submit a screenshot of the computer screen which could only show parts of the information in the [E]xcel files." *Id.* at 17. There are two problems with that argument.

To begin with, Commerce instructed Meisen to provide *screenshots*. If a respondent cannot provide the requested material, that party must notify Commerce, in advance, that it is "unable to submit the information

---

from the Quickbooks software they used for accounting purposes and (2) the feature allowing for such screenshots was distinct from the feature Meisen used to export data to Excel spreadsheets, thus confirming that "Meisen could have supplied other information, outside of Excel reports and worksheets, such as the screenshots or printouts we requested, but it decided not to do so." *Id.* at 80.

requested in the requested form and manner." 19 U.S.C. § 1677m(c)(1). It must provide "a full explanation and suggested alternative forms in which the party is able to submit the information" so that the Department can consider modifying its instructions. *Id.*

The company admits it failed to do that: "Commerce argues that Meisen should have contacted Commerce for instructions, but it is simply not reasonable for [the company] to contact Commerce and wait for a reply for each and every product where there are complications given the sheer number of product variations and the limited time available to respond to the questionnaires." ECF 95, at 23. But the statute itself requires that a party either respond as Commerce directs or else ask permission to proceed differently—a party cannot unilaterally decide that it will provide something different. In sum, a respondent cannot simply make up its own preferred way to respond and then say, "It's Commerce's problem to figure it out."

Moreover, while Meisen contends that its Excel spreadsheets *are* its source documentation, the following admission in its post-remand comments before this court undercuts that argument: "*To the extent that Meisen added additional cells and formulas to the [E]xcel file,* it was merely to ensure that the Department understood Meisen's calculations." *Id.* at 18 (emphasis added). Meisen *admits* it *modified* what it calls its "source documentation"—meaning, in turn, that it was no longer source documentation at all. That is

exactly why Commerce can insist on screenshots and other actual source documentation: The agency is entitled to (indeed, *needs to*) review something the respondent has not (and cannot have) modified. "As the Federal Circuit has noted, Commerce is entitled to insist on the original records because 'failure to submit primary source documentation' means that Commerce is 'unable to verify the accuracy of the information submitted.' " *Hung Vuong Corp. v. United States*, 483 F. Supp. 3d 1321, 1349 (CIT 2020) (quoting *Thyssen Stahl AG v. AK Steel Corp.*, No. 97-1509, 1998 WL 455076, at *5 (Fed. Cir. July 27, 1998)).

Meisen's failure to produce the required screenshots therefore supports Commerce's findings that the company withheld requested information and provided information that could not be verified. Either of those findings was a sufficient reason to resort to facts otherwise available. Meisen's admissions that it disregarded Commerce's instructions and deliberately modified the Excel spreadsheets it did submit support the Department's finding that the company did not act to the best of its ability to cooperate, thereby allowing the use of an adverse inference.

### B

Meisen asserts that once Commerce found its verification response inadequate, the Department was obligated to issue a supplemental verification questionnaire. The company argues that "[i]n an in-person verification, questions and follow-up questions would

have been raised verbally and answers would have been provided along with supplemental documentation if needed." ECF 95, at 14. The company contends that the Department may not dispense with such "follow-up" procedures. *Id.* Relatedly, Meisen argues that not issuing a supplemental verification questionnaire violated 19 U.S.C. § 1677m(d), which requires that if Commerce determines that a "response to a request for information" is deficient, it must give the respondent notice and an opportunity to cure.

The Federal Circuit has held that Commerce has the authority "to derive verification procedures ad hoc," *Goodluck India Ltd. v. United States*, 11 F.4th 1335, 1343 (Fed. Cir. 2021), and that the statute gives the Department "wide latitude in its verification procedures," *Stupp Corp. v. United States*, 5 F.4th 1341, 1350 (Fed. Cir. 2021). Thus, there is no requirement for any sort of "give-and-take" in verification.

And more specifically, when a respondent fails to provide requested substantive information during an investigation, at verification Commerce has the discretion to decline to accept the late submission of that information. *See Goodluck India*, 11 F.4th at 1342–43 (upholding Commerce's practice "to accept corrective information at verification only for minor corrections to information already on the record") (cleaned up). It necessarily follows that if the Department need not *accept* corrective substantive information at verification as to deficiencies in a respondent's *original*

submissions, it need not *seek* corrective substantive information when *verification* responses are deficient. Thus, the Department had no duty to issue a supplemental verification questionnaire to Meisen.[5]

C

1

Meisen argues that the various errors the Department found were not enough to warrant total AFA and that "Commerce should have considered alternatives,

---

[5] *Hitachi Energy USA Inc. v. United States*, 34 F.4th 1375 (Fed. Cir. 2022), does not support Meisen's argument. There, "Commerce changed the way it was evaluating the data" and "found Hyundai's original submissions inadequate to determine the service-related revenue in this adjusted manner." *Id.* at 1380. The Department, however, rejected Hyundai's § 1677m(d) request to submit additional information. The Federal Circuit noted inconsistencies in Commerce's analysis. The Department at first found that Hyundai reported its data properly but then reversed course, found Hyundai uncooperative, and blamed Hyundai for not submitting—during the original proceeding under the old protocol—information compliant with the Department's new protocol. *Id.* at 1383–84. The court found that "the statutory entitlement to notice and opportunity to remedy any deficiency is unqualified *in the circumstances of this case.*" *Id.* at 1384, *as amended on denial of reh'g*, No. 2020-2114, Dkt. #77, Order, at 2 (Fed. Cir. Nov. 23, 2022) (emphasis added). The court construes the words "in the circumstances of this case" as limiting *Hitachi*'s holding to its facts.

. . . including the use of partial facts available, with or without an adverse inference." ECF 95, at 13.

The company fails to specify what sort of "partial facts available" it contends Commerce should have employed but argues that any errors "have to be considered in light of the unsophisticated accounting system employed by Meisen's U.S. affiliates and the number of sales that they had to report." *Id.* at 19. It claims that "Commerce does not establish that any errors resulted in a lower dumping margin than otherwise would have been calculated or benefited Meisen in any way." *Id.* The company, however, cites no authority to establish that the Department needed to make such a finding.

Meisen further says it provided source documentation of sales terms, so Commerce was wrong in saying the company failed to do so. *Id.* at 20. But the Department actually found that Meisen failed to show that the information submitted was accurate. ECF 80-1, at 30–34.

Meisen then disputes Commerce's finding that for five of nine sales selected for verification, the ZIP Code in the database did not match the ZIP Code in the sales invoices provided, sometimes in very significant ways, and argues that any error was *de minimis*. ECF 95, at 21–22. But the Department found that the information could not be verified because the many glaring errors—including one example in which the database gave a ZIP Code about 1500 miles away (by road)

from the ZIP Code listed on the sales invoice—left Commerce with "no confidence" that Meisen correctly reported the information for the non-examined sales in its U.S. sales database. ECF 80-1, at 37. That conclusion is plainly reasonable.

Next, Meisen asserts that Commerce didn't give the company sufficient instructions on how to develop its list of consolidated customer codes, such that any errors in that respect were the Department's fault and not Meisen's. ECF 95, at 22–23. Again, that argument fails to address the company's statutory obligation to ask Commerce for help if instructions are unclear. As a matter of law, it is unacceptable for a respondent to guess at how to respond and then blame the Department if that guess is wrong.

Meisen contends that its method of reporting control numbers reflecting its product characteristics was reasonable and Commerce's method was not. *Id.* at 23. That argument is much like one the court rejected in *Hung Vuong*, where the plaintiff argued that it had "devised a completely new and more precise methodology." 483 F. Supp. 3d at 1362. The court found that to be a concession that the company ignored instructions, justifying the noncooperation finding. *Id.*

As to two other issues (calculation of price adjustments and freight expenses), Meisen states that neither it nor its affiliates record data in the way Commerce wanted information reported, so the Department cannot complain about their responses. ECF 95,

at 27–28, 30. But again, Meisen fails to demonstrate that it contacted Commerce in advance to explain the difficulty and to request permission to report data via different means. The company's argument boils down to, "Commerce didn't ask us the question in the way we wanted it asked, so we win." It doesn't work that way.

Finally, Meisen admits that it failed to report all its U.S. affiliates but quibbles about whether it matters. *Id.* at 31 ("The failure to report this affiliate sooner was clearly a minor oversight resulting from the fact that the company was not involved in the sale of subject merchandise."). Commerce noted, however, that the company acknowledged in its questionnaire responses that it had to report all affiliated companies, regardless of their involvement in the sale of subject merchandise. ECF 80-1, at 57 (citing Appx083309, on which Meisen quoted Commerce's instructions). Meisen therefore admits that it withheld requested information. Moreover, as to finding a lack of cooperation, Commerce aptly explained, "Rather than clearly identifying all companies involved in the sale and/or distribution of subject merchandise (affiliated or not) and clearly identifying all customer relationships, Meisen put forth a Gordian knot of information regarding its relationships and left it for Commerce to unravel." *Id.* at 130.

The government correctly summarizes the problem:

> Meisen's arguments minimize the impact of the errors by taking them out of context, or by ignoring large portions of Commerce's analysis regarding each error in the remand results. . . . For many of the individual errors and omissions addressed in its comments, Meisen does not even dispute the fact that it made the errors and omissions. Instead, Meisen simply argues that these errors are too minor or insignificant to justify total AFA.

ECF 98, at 23–24. The issue is not any one individual error. The issue is the errors in their totality, which the Department reasonably determined warranted the application of total AFA.

2

Meisen does not challenge the 262.18 percent adverse inference rate Commerce selected for the company, but Cabinets to Go contends that "Commerce failed to articulate any rationale for why the highest transaction-specific margin on the record was an appropriate AFA rate." ECF 99, at 6. It further argues that the rate was "unduly punitive," although its rationale is that Meisen was responsive and was "trying to cooperate with Commerce." *Id.* Because the court sustains the finding that Meisen was not cooperative, the sole issue remaining is whether the Department sufficiently explained its choice of rate.

Commerce's explanation mainly consists of the following paragraph:

> In deciding which facts to use when determining the AFA rate, section 776(b) of the Act [i.e., 19 U.S.C. § 1677e(b)] and 19 CFR 351.308(c)(1) authorized Commerce to rely on information derived from: (1) the petition; (2) a final determination in the investigation; (3) any previous review or determination; or (4) any information placed on the record. In the underlying investigation, we determined that the Petition dumping margin of 262.18 percent, which was the highest corroborated dumping margin on the record, was the most appropriate margin to select for the application of adverse inference. Therefore, in this final remand determination we continue to find 262.18 percent to be the appropriate margin to assign as AFA.

ECF 80-1, at 75.

In commenting on the draft remand results, Meisen argued—as Cabinets to Go does here—that the rate was too punitive. Commerce responded that no interested party had suggested that a different margin would be appropriate and that the 262.18 percent margin was "the AFA-margin already selected for the China-wide entity." *Id.* at 144. "[T]he assignment of the Petition dumping margin as the total AFA rate to Meisen, as a result of significant pervasive discrepancies and errors discovered in sampled sales of Meisen's

[verification questionnaire response], Meisen's failure to tie sales data to its books and records, *and* the finding that Meisen failed to identify all of its U.S. affiliates involved in the sale and/or distribution of subject merchandise, is not overly punitive, but is supported by record information, Commerce's practice, and court precedent." *Id.* at 144–45 (emphasis in original). Commerce also explained—though not as part of its discussion of the selected rate—that Meisen's failing verification "resulted in the finding that its U.S. sales database is entirely unusable. Without a U.S. sales database, we cannot calculate a dumping margin." *Id.* at 143.

The court has found an explanation of that sort satisfactory because the Federal Circuit has emphasized that "there is no one fixed single formula Commerce must use in deciding what rate is appropriate for an uncooperative respondent." *Hung Vuong Corp. v. United States*, Ct. No. 19-00055, Slip Op. 21-142, at 15, 2021 WL 4772962, at *6 (CIT Oct. 12, 2021) (citing *Heveafil Sdn. Bhd. v. United States*, 58 F. App'x 843, 849–50 (Fed. Cir. 2003) (rejecting claim that *partial* cooperation meant Commerce could not apply highest possible margin)). Because the Federal Circuit has sustained the highest possible rate as to a *partially* cooperative respondent, it must be permissible for the Department to apply such a rate to a *totally* uncooperative respondent.

Commerce may use "any dumping margin from any segment of the proceeding under the applicable antidumping order," 19 U.S.C. § 1677e(d)(1)(B), and may apply "the highest such rate or margin based on the evaluation by [Commerce] of the situation that resulted in the [Department] using an adverse inference," *id.* § 1677e(d)(2). That is what Commerce did here. The 262.18 percent rate has been applied to the China-wide entity, so "Commerce acted within its discretion in its selection of that AFA rate." *Hung Vuong*, Slip Op. 21-142, at 16, 2021 WL 4772962, at *7 (quoting *Deacero S.A.P.I. de C.V. v. United States*, 996 F.3d 1283, 1300 (Fed. Cir. 2021)). As a result, the court sustains the Department's rate selection.

* * *

For all these reasons, the court **SUSTAINS** Commerce's remand results insofar as they relate to Meisen. Doing so resolves the outstanding issues in this case, so the court will enter judgment on the agency record for the government and the Alliance. *See* USCIT R. 56.2(b). A separate judgment will issue. *See* USCIT R. 58(a).

Dated: April 24, 2023     /s/ *M. Miller Baker*
        New York, New York     Judge